**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DILLON and LEAH MULLINS, Each Individually and as Next Friends to S.M. and F.M., DANIEL and KRISTIE ARSENEAULT, Each Individually and as Next Friends to M.A. and L.A., ASHLEY BAEZ, Individually and as Next Friends to O.B. and J.B., NICHOLAS and CATY BARRON, Each Individually and as Next Friends to F.J. and H.B., LAVERNE and SAMANTHA BORST, Each Individually and as Next Friends to J.B. and L.B., ANGELIQUE COLON, Individually and as Next Friends to A.C. and E.C., JESSE and JULIE CORNELL, Each Individually and as Next Friends to D.C., L.C., and R.C., RAFAEL and DANIELLE CORTES, Each Individually and as Next Friends to V.C., ADRIAN and SANDRA DE LA CRUZ, Each Individually and as Next Friends to E.D.L.C., S.D.L.C., and A.J.D.L.C., MAURICIO DE LA GARZA, AND MARICELA NUNEZ PEDRAZA, Each Individually and as Next Friends to M.D.L.G. and M.D.L.G.N., COURTNEY ELLIOTT, Individually and as Next Friend to M.E. and W.E., MANDONNA and FAISAL FAROOQ, Each Individually and as Next Friends to A.F. and H.F., TANYA GARDINER, Individually and as Next Friends to S.G., K.G., and DESIREE GARDNER, her disabled daughter, JOHN and AMANDA JENSEN, Each Individually and as Next Friends to L.J., MICAH AND CORLETHIA KING, Each Individually and as Next Friends to El.K., G.K., I.K., C.K., and Ed.K., RULONDO and NICOLE KING, Each Individually and as Next Friends to Z.K. and X.M., SANDRA MOHAMED, Individually, ROBERT and ANESSA LITTLE, Each Individually and as Next Friends to Cal.L., Ch.L, and Car.L., CARLI LITTLE, Individually, DANIEL and DOROTHY LOEFFLER, Each Individually and as Next Friends to H.L. and J.L., ALLYSON LOEFFLER, Individually, EDWIN LOPEZ and JENIT LOPEZ GALLARDO, Each

Case No. 8:25-cv-02637-SDM-AAS

Individually and as Next Friends to H.G., P.G., A.G., D.L., and V.L., DEVON AND BRITTANY LOVE, Each Individually and as Next Friends to A.D.L., and A.R.L., ALBERT and KATELYN MALONE, Each Individually and as Next Friends to C.M. and E.M., ROBERT and JOY MARTIN, Each Individually and as Next Friends to N.B., R.B., T.B., H.J., and D.M., GRANT and ASHLEY MORAN, Each Individually and as Next Friends to E.M., M.M., G.M., and C.M., KASEY and APRIL O'DAY, Each Individually and as Next Friends to A.O., I.O., and J.O., EDGARDO PAGAN and ABIGAIL LUCIANO, Each Individually and as Next Friends to L.P-L., E.P-L., and D.P-L., ERICK and RACHAEL PROVEAUX, Each Individually and as Next Friends to S.P., and A.P., ASHTON J. and CHELSEA T. REYNOLDS, Each Individually and as Next Friends to B.R. and E.R., MICHAEL and PATRICIA SAYRE, Each Individually and as Next Friends to N.S., Hu.S., and H.S. AND R.S., DUSTIN and EMILY SHIRK, Each Individually and as Next Friends to S.D. and D.S., MIKALYA THOMPSON, Individually and as Next Friends to D.T. and L.T., JUAN and YISETH TORRES, Each Individually and as Next Friends to Ema T. and Emi T., LUIS JESUS RUEDA PRADA, Individually, STEPHEN and PHILOMENA RYAN TRAVERS, Each Individually and as Next Friends to S.T., TUCKER and KAYLA TYOE, Each Individually and as Next Friends to D.T. and E.T., GEORGE and EMILY VARGAS, Each Individually and as Next Friends to L.V. and K.V., MICHAEL and KIMBERLY WALKER, Each Individually and as Next Friends to A.W. and E.W., MICHAEL and VANESSA WEVER, Each Individually and as Next Friends to K.W. and E.W., BROOKLYN WEVER, Individually, THOMAS and HEATHER WHITTAKER, Each Individually and as Next Friends to S.W. and E.W.,

Plaintiffs,

v.

THE MICHAELS ORGANIZATION, LLC, MICHAELS MANAGEMENT

SERVICES, INC., MICHAELS MANAGEMENT SERVICES, LLC; AMC EAST COMMUNITIES, LLC, INTERSTATE REALTY MANAGEMENT COMPANY; MMS AIR FORCE LLC, and MICHAELS MILITARY HOUSING, LLC,

Defendants.
_________________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT OR IN THE ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT AND MOTION TO STRIKE**

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), 12(c) , 9(b) and 8(a), Defendants, AMC EAST COMMUNITIES, LLC, ("AMC EAST"), THE MICHAELS ORGANIZATION, LLC ("TMO"), MICHAELS MILITARY HOUSING, LLC ("MMH LLC"), and MMS AIR FORCE LLC, on behalf of itself, individually, and as successor in interest to: INTERSTATE REALTY MANAGEMENT COMPANY; MICHAELS MANAGEMENT SERVICES, INC.; MICHAELS MANAGEMENT SERVICES, LLC; (collectively "MMS AIR FORCE") (AMC EAST, TMO, MMH LLC, and MMS AIR FORCE shall be collectively referred to as "Defendants") by and through undersigned counsel, moves to dismiss Plaintiffs' Original Complaint[1] in its entirety based on lack of subject matter jurisdiction, failure

[1] On September 26, 2025, Plaintiffs filed their Original Complaint [ECF 1]. For purposes of this Motion, reference to the same is referred to as "Complaint" or "Compl."

to state a claim, preclusion under the Federal Enclave Doctrine, prohibited "shotgun" pleading, and the applicable Florida statute of limitations[2]. In support of the same, Defendants state:

**MEMORANDUM OF LAW**

## I. INTRODUCTION

On September 26, 2025, Plaintiffs filed a 864+ paragraph "Original Complaint" brought by approximately forty-four (44) households, namely: Mullins, Arsenault, Baez, Barron, Borst, Colon, Cornell, Cortes, De La Cruz, De La Garza, Elliott, Farooq, Tanya Gardiner, Gardiner, Jensen, King, Rulondo King, Robert Little, Little, Loeffler, Lopez, Love, Malone, Martin, Moran, Mohamed, O'Day, Pagan, Prada, Proveaux, Reynolds, Sayre, Shanholtzer, Shirk, Thompson, Torres, Travers, Tyoe, Vargas, Villa, Walker, Michael Wever, Wever, and Whittaker (hereinafter collectively "Plaintiffs"). Plaintiffs assert that they are or were residents of the Harbor Bay housing community at MacDill Air Force Base ("MacDill AFB") located in Tampa, Florida, via individually-executed residential lease(s). Specifically, each family signed a lease with a one-year initial term and a month-to-month

[2] Historical Florida Statutes (1949) available at: https://library.law.fsu.edu/Digital-Collections/FLStatutes/index.html#reload – (Go to 1949) (last visited October 27, 2025)

automatic renewal thereafter. Plaintiffs leased and occupied homes located at various addresses on MacDill AFB (the "Premises") between as long ago as September 20, 2012, up to the present (the "Residency"). The Complaint alleges generally that the Premises were not properly maintained and/or repaired, leading to moisture and mold conditions resulting in alleged health complications of family members during the applicable Residency. *See generally* **ECF 1** ("Original Complaint" or "Compl."). Despite the litany of complaints which these Plaintiffs now make in this lawsuit, at least thirty (30) of the Plaintiff households allowed their leases to renew on a month-to-month basis prior to receiving PCS (Permanent Change of Station) orders, or still reside on the Premises.

Even more troubling, most or all Plaintiffs claim to know of these alleged conditions from the inception of their leases—from "the start," within "two weeks after moving in," or "within a month," etc. *See generally* **ECF 1**. Yet, these Plaintiffs waited years before filing suit, allowing time to pass, recollections to fade, and evidence of the actual condition of the Premises to disappear.

The Complaint also names a litany of Defendants: TMO; MMS INC[3]; MMS LLC[4]; AMC EAST; Interstate[5]; MMS AIR FORCE; and MMH LLC[6]. While denying every aspect of Plaintiffs' allegations and ad damnum clause(s)—Defendants assert that only two (2) of the seven (7) named Defendants are relevant to this lawsuit: AMC EAST (the owner of the Residences), and MMS AIR FORCE (the current and proper management company which has assumed all assets and liabilities of the past management companies).

All of Plaintiffs' claims in the Complaint are legally deficient and should be dismissed by this Motion to Dismiss and/or Motion for Judgment

[3] MMS INC is a dissolved entity. Assets and liabilities were assumed by the next management company and are now covered by MMS AF LLC (the current and proper management company), which is filing this Motion as successor in interest to MMS INC.

[4] MMS LLC. is a dissolved entity. Assets and liabilities were assumed by the next management company—now covered by MMS AF LLC (the current and proper management company), which is filing this Motion as successor in interest to MMS LLC.

[5] INTERSTATE is a dissolved entity. Assets and liabilities were assumed by the next management company and are now covered by MMS AF LLC (the current and proper management company), which is filing this Motion as successor in interest to Interstate.

[6] MMH LLC is not affiliated with or associated with MacDill AFB housing and/or any of the allegations asserted herein.

on the Pleadings, or alternatively the law requires Plaintiffs provide a more definite statement as to all allegations.

**First**, all of the acts alleged in the Complaint occurred on MacDill AFB—land designated indisputably as a federal enclave. As such, Florida state laws (and causes of action arising therefrom) which did not exist until after MacDill AFB was ceded to the United States are not actionable. *See* **EX 1**, Deed of Cession.

**Second,** the Complaint constitutes a *quintessential* shotgun pleading, burying material facts—if any—beneath 215 pages of rambling irrelevancies, and failing in entirety to give each Defendant adequate notice of the claims against it and the grounds upon which each such claim rests.

**Third,** the Complaint fails sufficiently to allege its referenced causes of action—including but not limited to breach of contract, negligence, gross negligence, negligence per se, unjust enrichment, and nuisance. Moreover, the Plaintiffs fail to attach, *interalia*, the underlying lease contract(s) and fail to name the proper parties in interest under each lease.

**Fourth**, Plaintiffs have failed to plead fraud with particularity or allege facts which would constitute actionable fraud. Moreover, Plaintiffs' allegations belie any claim of "justifiable reliance." Further, any allegations

of misrepresentation do not give rise to an independent cause of action as performance under the relevant contract is interwoven and indistinct from the heart of the contractual agreement.

**Fifth**, the Complaint is needlessly-riddled with redundant, immaterial, impertinent, and scandalous allegations that have no possible relation to the controversy, only serve to confuse the issues, and substantially prejudice the Defendants.

## II. LEGAL STANDARD

### a. Dismissal

A motion to dismiss "tests those elements in the cause that, while logically no more nearly essential than any other of its elements, are peculiarly suit to initial disposition; they are not only basic but readily determinable. In the main, they are jurisdictional; they go to the question, broadly speaking, of whether any building permit has been obtained." John T. Wiggington, New Florida Common Law Rules, 3 FLA. LAW REV. 6, 6 (1950); 1.Fla. C. L. R. 13(b).

#### i. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the

case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). "Generally, the Plaintiff must allege, with particularity, facts necessary to establish jurisdiction and must support his allegation if challenged to do so." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1273 (11th Cir. 2000). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the Court is not required to accept as true any legal conclusions couched as factual allegations. *See* Papasan v. Allain, 478 U.S. 265, 286 (1986).

"[C]ourts should determine their jurisdiction before deciding Rule 12(b)(6) motions. Jones v. State of Ga., 725 F.2d 622, 623 (11th Cir. 1984). If jurisdictional issues are present, "the court should dismiss only on the jurisdictional ground under Fed. R. Civ. P. 12(b)(1), without reaching the question of failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977).

ii. Rule 12(b)(6)

To survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (*citing* Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 544 (2008)). The U.S. Supreme Court in Iqbal clarified that the decision in Twombly "expounded the pleading standard for all civil actions." Id. at 683. The U.S. Supreme Court indicated that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. "When, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support a cause of action, dismissal is appropriate." Marshall County Bd. Of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Further, "[w]hen the allegations contained in a complaint are wholly conclusory . . . it is proper to dismiss for failure to state a claim. Davidson v. Georgia, 622 F.2d 895, 897 (11th Cir. 1980). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." Am. Int'l Specialty Lines Incs. Co. v. Mosaic Fertilizer, LLC, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. October 9, 2009) (Lazzara, J.).

iii. Rule 9(b)

"Under Rule 9(b), plaintiffs must allege (1) precisely what statements were made in what documents or what oral misrepresentations were made;

(2) the time, place, and person responsible for the statement; (3) the content of such statements and the manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." Omnipol, A.S. v. Worrell, 421 F.Supp.3d 1321, 1334–35 (M.D. Fla. 2019), aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298 (11th Cir. 2022); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371, 1380–81 (11th Cir. 1997). To satisfy Rule 9(b)"a plaintiff must establish the who, what, when, where, and how of the fraud." Mizarro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008); United States ex rel. Zafirov v. Fla. Med. Assocs. LLC, No. 8:19-CV-1236-KKM-SPF, 2021 WL 4443119, at *5 (M.D. Fla. Sept. 28, 2021). In cases involving multiple defendants, a complaint alleging fraud must "reasonably notify the defendants of their purported role in the scheme" and "inform each defendant of the nature of his alleged participation in the fraud." Brooks, 116 F.3d at 1381.

iv. Rule 12(c)

"The standard for Rule 12(c) motions for judgment on the pleadings[7] is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." Waller v. Hanlon, 922 F.3d 590, 599 (5th Cir. 2019). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (*quoting* Twombly, 550 U.S. at 570). The court must set aside any unsupported legal conclusions and focus on well-pled facts, then judge the plausibility of those facts to decide whether the complaint shows more than "the mere possibility of misconduct." Id. at 679; Waller, 922 F.3d at 599.

**b. Judicial Notice**

Courts in this District have noted that under Rule 12(c)[8], a motion for judgment on the pleadings can consider, not only the complaint, answer,

[7] A motion for judgment on the pleadings, "once the jurisdictional requisites are met, checks the architectural designs, the blueprints, of the case as conceived by plaintiff and defendant; if either blueprint fails to confirm to any pattern known to the law, there is no need for investigating the availability of the materials to be used in construction, that is, the evidentiary facts." Wiggington, New Florida Common Law Rules, 3 FLA. LAW REV. at 6.

[8] Courts may also take judicial notice of the public record when considering a 12(b)(6) motion to dismiss—while construing the allegations within the complaint the court need not accept 'facts which run counter to facts of which the court can take judicial notice."' Howard v. Gee, No. 8:04-CV-312-T-30TBM, 2009 WL (footnote continued)

and all documents attached, but also any matter appropriate for judicial notice with respect to the factual background of the case. *See* Booker v. Doyon Sec. Srvcs., LLC, No. 15-24146, 2017 WL 5202682 (S.D. Fla. Jan. 20, 2017). In Booker, the District Court took judicial notice of the "fact that [the property] is located within a federal enclave." Id. (noting courts have taken judicial notice of the "boundaries of the nation, of the location of state and territories, the location of the boundaries of the state in which the court is sitting, of counties, districts and townships.").

Other Courts within this Circuit have also acknowledged that the governmental authorities relied upon in Booker were public record and reliable sources. Id. Accordingly, courts in this Circuit have routinely taken judicial notice of publicly available information and reliable sources pertaining to federal property ownership and cession to conclude whether Federal Enclave Doctrine is applicable to the claims at issue. Id.; Aponte v. Akima Glob. Servs., LLC, 2019 WL 451797 (S.D. Fla. Jan. 18, 2019); King v. Akima Glob. Servs., LLC, 775 F. App'x 617, 619 (11th Cir. 2019).

---

10711627, at *1 (M.D. Fla. Sept. 22, 2009); Ellen S. v. Fla. Bd. Of Bar Examiners, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994).

As such, Defendants request judicial notice of this Court's findings on March 26, 2025, in Eid v. Michaels Mgmt. Servs., LLC as those findings relate specifically to the application of the Federal Enclave Doctrine to MacDill AFB. *See* No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *3 (M.D. Fla. Mar. 26, 2025) ("Eid").

Further, Defendants request judicial notice of the Deed of Cession dated April 4, 1950 filed in Eid as document 24-2 and attached hereto as **Exhibit 1** as the Deed of Cession is a publicly available document from a reliable source pertaining to federal property ownership and cession and thus judicially noticeable.

## III. ARGUMENT

### a. This Court Lacks The Statutory Or Constitutional Power To Adjudicate This Case Rendering It Subject To Dismissal Pursuant To Rule 12(B)(1) and the Federal Enclave Doctrine.

Counts V, VI, VII, X, XII, XIII, XIV, XV, XVI, XVIII, and XIX of Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim because the Premises are located wholly within MacDill AFB, which is a federal enclave subject to exclusive federal jurisdiction since March 29, 1950. Therefore, all Florida laws enacted or modified ***after*** the 1950 cession date do not apply to the federal enclave.

"The federal enclave doctrine gives Congress the power to 'exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."' King, 775 F.App'x 617 at 620 (quoting U.S. Const. art. I § 8, cl. 17). Notwithstanding this exclusive federal legislative authority, "when an area in a State becomes a federal enclave, 'only the [state] law if effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." Parker Drilling Mgmt. Servs., Ltd. V. Newton, 587 U.S. 601, 612 (2019) (quoting James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100 (1940).

There are three exceptions to the general rule that state law as of the date of cession applies within the federal enclave: "(1) where Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right to legislate over specific matters at the time of cession; and (3) where minor regulatory changes modify laws existing at the time of cession." Allison v. Boeing Laser Tech Servs., 689 F.3d 1234, 1237 (10th Cir. 2012).

In regard to the instant matter, the State of Florida validly ceded all of the land comprising MacDill AFB to the United States in 1950. *See* **Exhibit**

**1**; *see also* Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *2; United States v. Boling, No. 8:19-cr-518-T-36JSS, 2020 WL 1931328 (M.D. Fla. Apr. 2., 2020), *report and recommendation adopted*, 2020 WL 1929465 (M.D. Fla. Apr. 21, 2020) (recognizing MacDill as a federal enclave). Additionally, it has been established by this Court that no additional exception exists wherein parties contractually-agree that modern state law will control through a choice-of-law provision. Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *2; *see also* Fischer v. Fort Belvoir Residential Ctys. LLC, No. 1:22-CV-286 (RDA/LRV), 2024 WL 666067 (E.D. Va. February 16, 2024) (disagreeing with Johnson v. Lendlease (US) Pub. Partnerships LLC, No. 7:21-CV-188-D, 2022 WL2447091 (E.D.N.C. July 5, 2022) that a choice-of-law provision could "effectively abrogate the application of the federal enclave doctrine"). "Therefore, to the extent state law is to be applied to events occurring on MacDill, it is Florida state law as it existed in 1950, when the transfer of jurisdiction took place. King, 775 F. App'x at 612.

As such, it follows that pursuant to the federal enclave doctrine—in the absence of the exceptions as stated *supra*—that this Court lacks the subject matter jurisdiction to adjudicate Florida state law causes of action that were not enacted prior to MacDill's cession in 1950. Accordingly,

Plaintiffs' Counts V, VI, VII, X, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX—*interalia*—must be dismissed as they are precluded by the federal enclave doctrine.

Accordingly, whether the Court construes Defendant's Motion as one to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it should dismiss *all* of Plaintiffs' state law claims.

**b. The Complaint Fails To State A Claim Upon Which Relief May Be Granted And Is Subject To Dismissal Pursuant To Rule 12(B)(6) And 12(C) at Counts VI, VII, X, XII, XIII, XIV, XV, XVI, XVIII, and XIX and Other Causes of Action are Precluded by the Federal Enclave Doctrine.**

Counts V, VI, VII, X, XII, XIII, XIV, XV, XVI, XVIII, and XIX of Plaintiffs' Complaint should be dismissed for failure to state a claim the because they are Florida state law causes of action that did not exist in 1950—when the transfer of jurisdiction took place—and federal enclave doctrine controls. Specifically, Defendants assert the following:

i. Plaintiffs' Negligent Infliction of Emotional Distress Claim (Count V) is Barred.

Florida Law did not recognize Negligent Infliction of Emotional Distress ("NIED") as its own cause of action until at least 1985. *See* Champion v. Gray, 478 So.2d 17 (Fla. 1985). Specifically, in Champion, the

Florida Supreme Court revisited and revised the impact rule to allow for recovery for negligent infliction of emotional distress without impact. Id. Thus, Plaintiffs' claim for NIED is precluded by the federal enclave doctrine as this claim was not recognized pre-cession.

v. Plaintiffs' Intentional Infliction of Emotional Distress Claim (Count VI) is Barred.

Intentional Infliction of Emotional Distress ("IIED") was not recognized by the Florida Law as a tort or independent cause of action until 1958. *See* Julia Slocum and Homer V. Slocum v. Food Fair Stores of Florida, Inc., 100 So.2d 396, 398 (Fla. 1958). Thus, Plaintiffs' claim for IIED is precluded by the federal enclave doctrine as this claim was not recognized pre-cession.

vi. Plaintiffs' Warranty of Habitability Claim (Count VII) is Barred

Warranty of Habitability—recognized under/within Sec. 83.51, Fla. Stat. (a statute covering a "Landlord's obligation to maintain premises")—was codified by the Florida Legislature in 1974. *See* Javins v. First Nat. Realty Corp., 428 F.2d 1071, 1075 (D.C. Cir. 1970); Rozen v. Chrysler Corp., 142 So.2d 735 (Fla. 3d DCA 1962). "Florida likewise had no minimum building code before 1974." Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *3;

*see also* Sec. 553.73, Fla. Stat. Thus, Count VII of Plaintiffs' Complaint is precluded by the federal enclave doctrine and must be dismissed as this claim was not recognized pre-cession.

vii. Plaintiffs' Medical Monitoring Claim (Count X) is Barred

Florida state law precedent as to "medical monitoring" is a judicial creation rather than a statutory creation. *See* Petito v. A.H. Robins Co., 750 So. 2d 103 (Fla. 3d DCA 1999). Florida's Third District Court of Appeal ruled and recognized a party's right, under the appropriate circumstances, to court-supervised medical monitoring. Id. However, the Petito decision, and therefore potential entitlement, was not rendered until 1999. As such, Count X of Plaintiffs' Complaint (and all relevant prayer(s) for relief) is precluded by the federal enclave doctrine and must be dismissed as this claim was not recognized pre-cession.

viii. Plaintiffs' FDUPTA Claims (Counts XII and XIII) are Barred

The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") was created by the Florida Legislature in 1973—codified in Sec. 501.201-501.213, Fla. Stat. As such, Counts XII and XIII of Plaintiffs' Complaint are

precluded by the federal enclave doctrine and must be dismissed as this claim was not recognized pre-cession.

ix. Plaintiffs' Negligent Misrepresentation Claims (Counts XIV and Count XV) are Barred

Count XIV and Count XV of Plaintiffs' Complaint are precluded by the federal enclave doctrine because Florida Courts have held—prior to 1997—that any (alleged) negligent misrepresentation relating to the "breaching party's performance of a contract" does not give rise to an independent cause of action." Gilchrist Timber Company v. ITT Rayonier, Inc., 696 So.2d 334, 338 (Fla. 1997); Hotels of Key Largo v. RHI Hotels, Inc., 694 So. 2d 74, 76 (Fla. 3d DCA 1997). As such, Counts XIV and XV of Plaintiffs' Complaint are precluded by the federal enclave doctrine and must be dismissed as this claim was not recognized pre-cession.

x. Plaintiffs' Fraud Claims (Count XVI, XVII, XVIII, and XIX) are Barred

Plaintiffs assert various fraud causes of action: fraudulent inducement; fraudulent misrepresentation; and fraudulent concealment. Compl. ¶¶ 808-864. All of these counts fail on the basis of federal enclave jurisdiction and/or failure to plead with the requisite particularity. FLA. R. CIV. P. 1.120(b); Huffstetler v. Our Home Life Ins. Co., 65 So. 1, 2 (Fla. 1914)

(holding "[w]henever fraud is relied upon in any pleading, either at law or in equity, the allegations or averments should be specific, and the ultimate facts constituting the particular fraud relied upon should be stated with certainty and distinctness, else such pleading, upon proper attach, will be held bad"). "Pleadings should be certain, clear, and concise, and where fraud is relied on the averments should be specific and the facts constituting such fraud should be stated." State ex rel. Davidson v. Couch, 156 So. 297, 301 (Fla. 1934); Heathcote v. Fairbanks, Morse & Co., 53 So. 950, 952 (Fla. 1910); Huffstetler, 65 So. at 2.; Seaboard Air Line Ry. v. Rentz & Little, 54 So. 13, 13 (Fla. 1910). Specifically, "a plaintiff must establish the who, what, when, where, and how of the fraud." Mizarro, 544 F.3d at 1237. General allegations of fraud, without stating the definite acts constituting fraud, are not sufficient. Huffstetler, 65 So. at 2. Further, and though fraud-related Florida state law legal concept(s) *generally* are found pre-cession—claims based on Fraudulent Inducement (Count XVI) and Fraudulent Concealment (Counts XVIII and XIX) were not recognized as independent causes of action until the 1960s. *See* Greenberg v. Berger, 46 So. 2d 609 (Fla. 1950); Davis v. Dunn, 58 So. 2d 539, 542 (Fla. 1952); Tonkovich v. S. Fla. Citrus Indus., Inc.,

185 So. 2d 710 (Fla. 2d DCA 1966); Beagle v. Bagwell, 169 So. 2d 43, 44 (Fla. 1st DCA 1964).

Plaintiffs fail in entirety to allege with specificity ultimate facts regarding the alleged fraud. In addition to commingling general allegations "against all Defendants," Plaintiffs "incorporate by reference" 668 paragraphs of the Complaint into Counts XVI, XVII, XVIII, and XIX. Compl. ¶¶ 820, 829, 842, 853. It is unclear from Plaintiffs' allegations the "who, what, when where, and how" of the alleged fraud—and the incorporation of the 200+ pages that precede said allegations only serve to further confuse the issues. The absence of specific averments allegations of ultimate fact with certainty and distinctness is fatal to Plaintiffs' claims for Fraudulent Inducement, Fraudulent Misrepresentation, and Fraudulent Concealment (Counts XVI, XVII, XVIII, and XIX), thus these causes of action should be dismissed for this reason.

xi. Damages for Property, Interest, and Fees are Barred

The Complaint also pleads entitlement to punitive damages, pre-judgment interest on damages, costs, and the recovery of attorney's fees. *See* **Ex. A**: Prayer for Relief ¶¶ "b" and "c". Recovery of pre-judgment interest and prevailing party attorney's fees are permitted under certain

circumstances pursuant to Sec. 57.105 and 57.112, Fla. Stat.. However, prior to 1995 Florida law did not recognize or authorize recovery of interest or awards for prevailing party attorney's fees for claims sounding in contract or negligence. *See* Sec. 57.105(1), Fla. Stat. (1995). Moreover, as Congress has not enacted legislation incorporating Florida laws for injuries to property, the Florida common law and statutes in place at the time the land was ceded to the United States govern Plaintiffs' property damage claims. Therefore, the relief requested by Plaintiffs, including recovery of property damages, interest, costs, and attorney's fees, is barred. Because Congress has not enacted federal legislation applying Florida tort, pre-judgment interest, and prevailing party attorney's fees laws to federal enclaves, these counts and claims for relief must be dismissed.

xii. Plaintiffs' Unjust Enrichment Claim Fails Because Their Relationship with Defendants is Governed by an Express Contract

"Under Florida Law, 'the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.' " Shelor v. Jaguar Land Rover N. Am. LLC, No. 3:23-CV-908-WGY-PDB, 2025 WL 1580834, at *51 (M.D. Fla. Jan. 31, 2025). Thus, "the existence of an express contract between the parties concerning the same subject

matter" precludes an unjust enrichment claim. Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008); Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC, 67 F.4th 1312, 1317 (11th Cir. 2023); *see also* Peebles v. GrassMasters Prop. Mgmt., Inc., 384 So.3d 287, 289 (Fla. 3d DCA 2023) (holding the trial court erred in providing relief based on unjust enrichment because an express contract on the same subject matter existed).

Plaintiffs' Count XI is for unjust enrichment. *See* Compl. pp. 188-190 and 195. While Plaintiffs failed to identify or attach the relevant leases to their Complaint, Plaintiffs expressly allege that they had leases with the Defendants and that the Defendants allegedly breach those leases. Because the existence of a written lease agreement with each of the Plaintiffs is undisputed, Plaintiffs cannot assert a claim for unjust enrichment as a matter of law.

xiii. Plaintiffs' Third-party Beneficiary Claim Fails as Plaintiffs are Merely Incidental Beneficiaries.

"Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries." Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir.1968); Rebman v. Follett Higher

Educ. Grp., Inc., 575 F.Supp.2d 1272, 1276 (M.D. Fla. 2008). Donee beneficiaries and creditor beneficiaries constitute "intended beneficiaries"—those who have a right to sue for enforcement of the contract. Rebman, 575 F.Supp.2d at 1276-1277. "Incidental beneficiaries" have no enforceable right under the relevant contract. Id. "The *intent* of the parties is the key to determining whether a third party is an intended (*i.e.*, donee or creditor) or only an incidental beneficiary." Marianna Lime Prods. Co. v. McKay, 147 So. 264, 265 (1933); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005). "The contracting parties' intent to benefit the third-party must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right." Id. at 982 (*citing* Am. Sur. Co. v. Smith, 130 So. 440, 441 (Fla. 1930)).

The instant Complaint fails to identity any "specific" and "clearly-expressed" language that endow Plaintiffs the status of "intended beneficiary"—precluding the right to sue for enforcement of said contract. As such, Count VIII of Plaintiffs' Complaint must be dismissed.

**c. Plaintiffs' Complaint Is An Improper Shotgun Pleading**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the case showing that the pleader is entitled

to relief." Further, Rule 10(b) provides that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." In Weiland v. Palm Beach Cty. Sheriff's Office, the Eleventh Circuit specifically criticized shotgun pleadings where the plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." Id., 792 F.3d 1313, 1321-23 (11th Cir. 2015); *see also* Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

Under Florida law, it is well settled that the plaintiff must plead a separate and distinct count against each individual defendant, rather than a single count against the defendants as a group. *See* Fla. R. Civ. P. 1.110(f); Pratus v. City of Naples, 807 So.2d 795, 797 (Fla. 2d DCA 2002); *see also* Aspsoft, Inc. v. Webclay, Inc., 983 So.2d 761, 768 (Fla. 5th DCA 2008); Dubus v. McArthur, 682 So.2d 1246, 1247 (Fla. 1st DCA 1996). Additionally, a plaintiff must comply with Florida Rule of Civil Procedure 1.110(b)(2),

which requires that a complaint contain a short and plain statement of the ultimate facts showing that the pleader is entitled to relief. *See also,* Goldschmidt v. Holman, 571 So.2d 422, 423 (Fla. 1990); Horowitz v. Laske, 855 So.2d 169 (Fla. 5th DCA 2003).

As detailed *supra*, the Complaint violates Rules 8(a)(2) and 10(b) and constitutes an obstruction to due administration of justice and an intolerable toll on the trial court's docket. *See* Magluta, 256 F.3d at 1284-85; Byrne v. Nezhat, 261 F.3d 1075, 1128-34 (11th Cir. 2001); Weiland, 792 F.3d at 1321-23. Contrary to the requirements of Rule 8, the Complaint contains 215 pages and 864+ paragraphs of rambling recitations—duplicative, inconsistent, wholly conclusory, and vague allegations—that are a clear example of a *quintessential* "shotgun pleading." Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991). The Eleventh Circuit has identified four common hallmarks of shotgun pleadings:

> Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act.

McDonough v. City of Homestead, 771 F. App'x 952, No. 18-13263 Non-Argument Calendar, 2019 WL 2004006, at *2 (11th Cir. May 7, 2019) (citing Weiland, 792 F.3d, at 1321-23 (11th Cir. 2015)); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir. 2018)).

The Complaint bears three of the hallmarks of the *consistently-condemned* shotgun pleading as articulated by the Eleventh Circuit. Plaintiffs' commingling of claims and failure to state separate and distinct claims for each individual Plaintiff against each individual Defendant as argued *supra*. In addition, the Complaint bears two additional hallmarks of a shotgun pleading and should be dismissed, as discussed *infra*.

i. The Complaint contains multiple claims that adopt the preceding paragraphs by reference

In all counts against Defendants the Complaint incorporates all preceding paragraphs by reference. Compl. ¶¶670, 676, 686, 696, 709, 720, 729, 737, 750, 762, 770, 775, 787, 798, 808, 820, 829, 842, and 853. The result is that each count contains dozens of irrelevant factual allegations and conclusory legal claims. *See* Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Such pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Fla.

Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). With specific relevance to the voluminous allegations in the Complaint—to "sift out the irrelevancies" would prove to be a task of onerous magnitude constituting a waste of judicial resources, an inexorably broadening of the scope of discovery, only serving to burden this Court's docket and undermining the public's respect for the courts. Strategic Income Fund, 305 F.3d at 1295; Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008).

The Eleventh Circuit has "suggest[ed] that, when faced with such pleading, the district court, acting on its own initiative, require a repleader." Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1197 & n.13 (11th Cir. 2003); *see also* Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997) (recognizing that shotgun pleadings are "altogether unacceptable"). The Eleventh Circuit "has been roundly, repeatedly, and consistently condemning [shotgun pleadings] for years." Davis, 516 F.3d at 979. It is entirely appropriate for a defendant served with a shotgun complaint to move to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Weiland, 792 F.3d at 1320; Terry v. Interim Healthcare Gulf Coast, Inc., 8:18-cv-692-T-33JSS, 2018 WL 1992276, (M.D. Fla. Apr. 27, 2018).

Plaintiffs' Complaint contains nineteen (19) separate counts. At the beginning of each count, Plaintiffs "incorporate by reference" all preceding paragraphs. This is exactly the type of pleading prohibited by the Eleventh Circuit and dismissal is appropriate.

ii. The Complaint includes conclusory, vague, and immaterial allegations that do not clearly connect to a particular cause of action

The Complaint contains numerous conclusory, vague, and immaterial allegations. For example, in one paragraph Plaintiffs claim that "[d]efendants have profited from a multi-billion-dollar corporate military housing monopoly that abuses, sickens, and traumatizes American military families." Compl. p. 1. Further, the Complaint goes on to state that "[t]he Defendants' cartel-like hold on the housing monopoly also denies the service members and their commands an effective dispute resolution system, which further distracts from their primary responsibilities to the military." Compl. p. 2.

The Complaint contains a lengthy and rambling recitation of events unrelated to the claims raised by the Plaintiffs in the present case, rather than a short plain statement of any facts supporting the Plaintiffs claims—failing in entirety to give Defendants adequate notice of the claims against

them, and the grounds upon which each claim rests. *See, e.g.*, Compl. ¶¶51-94; Compl. Introduction.

As the Complaint fails to comply with the Florida pleading requirements of a single count against each defendant, Defendants cannot adequately assess the specific conduct alleged by each Plaintiff nor the damaged alleged by each Plaintiff with respect to each individual Defendant, and as such Defendants cannot fairly and accurately respond to the Complaint as it is presently pled. As such, the Complaint fails to comply with Rule 8 and the Florida Rules of Civil Procedure and should be dismissed.

**d. Plaintiffs' Complaint Fails to Sufficiently Allege Counts I, II, III, IV, and IX**

While Defendants maintain that Plaintiffs' Complaint must be dismissed in its entirety as a shotgun pleading, Defendants also assert that pre-cession Florida law and statutory limitation period(s) must be applied to Plaintiffs' breach of contract, negligence, gross negligence, negligence per se, and nuisance causes of action. Defendants further assert that the Complaint fails to sufficiently allege causes of action for the same.

Plaintiffs have failed to state a cause of action for negligence (Count II), gross negligence ( Count III), nuisance ( Count IV), and negligence per se (Count IX) under the independent tort doctrine because the Parties are in contractual privity and Plaintiff is unable to allege the existence, and breach of an independent duty that is distinct from contract. Parties in contractual privity may not assert tort claims arising from [any] breach identical to the underlying contractual obligations. *See* Bluestar Expo., Inc. v. Enis, 568 F.Supp. 3d 1332, 1333 (S.D. Fla. 2021).[9]

i. Plaintiffs' Complaint fails to allege a cause of action for Breach of Contract (Count I)

An adequately plead breach of contract action requires a valid contract, a material breach, and damages. *See* R. Plants, Inc. v. Dome Enter., Inc., 221 So.3d 752, 754 (Fla. 3d DCA 2017). Moreover, a written contract or document that forms the basis of a claim for relief shall be attached to or incorporated in the pleading and any exhibit that is attached to the pleading is considered a part of that pleading. *See* FLA. R. CIV. P. 1.130. Further, where the Plaintiff fails to attach the relevant contract while the complaint

[9] "Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that otherwise breach-of-contract claims as tort claims." Bluestar, 568 F. Supp. 3d at 1353.

explicitly references the contract, the Court should be able to consider the entirety of the contract in its decision on a motion to dismiss in order to "encourage the speedy, just and inexpensive determination of every action." Here, Plaintiffs failed to attach any lease of the at over forty-four (44) lease contracts. As such, Count I of Plaintiffs' Complaint must be dismissed.

A. The Little family's breach of contract claim regarding their tenancy at 8480 Fortress Dr. is barred by the statute of limitations

Plaintiffs Robert Little, Anessa Little, and their minor children Ca. L., Cal. L. CH. L, and CAR. L, (collectively "Little Family") allege that they moved into the home located at 8480 Fortress Drive on or about September 2012. Compl. ¶¶323. They further allege that the moved out of the home located at 8480 Fortress Drive on or about March 22, 2016. Compl. ¶¶323.

Applicable Florida law requires that any suit brought based on a written contract must be brought within 5 years. Sec. 95.11(3), Fla. Stat. (1949). As this action was not initiated until September 26, 2025, more than five years after the Little Family moved out of 8480 Fortress Drive, the statute of limitations for any claims related to or arising out of the Little Family's tenancy at 8480 Fortress Drive has expired, and thus are not actionable. To the extent the Little Family's claims against Defendants arise

out of or are related to their tenancy at 8480 Fortress Drive, these claims must be dismissed as a matter of law.

B. Any claims by other Plaintiffs based on the contract which occurred prior to September 26, 2020 are barred by the statute of limitations

As the Complaint is a shotgun pleading that lacks specific information about what actions or inactions give rise to the breach of contract claims by the various Plaintiffs, to the extent that these claims arise out of or are related to tenancies that occurred, or breaches that are alleged to have occurred prior to September 26, 2020 are barred by the applicable statute of limitations as Florida law requires that any suit brought based on a written contract must be brought within 5 years. Sec. 95.11(3), Fla. Stat. (1949).

ii. Plaintiffs' Complaint fails to allege a cause of action for Negligence (Counts II and IX)

The elements of actionable negligence are:

1. existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff;
2. failure on the part of the defendant to perform this duty; and
3. an injury or damage to the plaintiff proximately caused by such failure.

Encarnacion v. Lifemark Hosp. of Fl., 211 So.3d 275, 277 (Fla. 3d DCA 2017). The duties alleged are that of a landlord and arise both out of the Lease. Specifically, the only duties under the lease that Plaintiffs' reference are for Defendants to "maintain their homes [and/or their Premises] in a reasonably safe condition and to remediate moisture, mold, and other dangerous conditions pursuant to a reasonable standard of care." Compl. ¶¶688-690. The duties alleged in the Complaint are greater than those provided for in the Florida law at the time of cession—thus are not actual duties imposed by law upon Defendants' and thus not actionable. Moreover, Plaintiffs failed in entirety to attach any lease contract, work order, etc., for this Court's consideration. As such, Plaintiffs cannot prove any material violation and no cause of action for negligence exists as a matter of law. As such, Counts II and IX of Plaintiffs' Complaint must be dismissed.

A. The Little Family's negligence claim regarding their tenancy at 8480 Fortress Dr. is barred by the statute of limitations

Similar to arguments asserted *supra* as relates to the Little Family and the statute of limitations (breach of contract), applicable Florida law requires that any suit brought based on negligence must be brought within 4 years

of the alleged negligent act. Sec. 95.11(4), Fla. Stat. (1949). As this action was not initiated until September 26, 2025, more than four years after the Little Family moved out of 8480 Fortress Drive, the statute of limitations for any claims related to or arising out of the Little Family's tenancy at 8480 Fortress Drive has expired, and thus are not actionable. To the extent the Little Family's claims against Defendants arise out of or are related to their tenancy at 8480 Fortress Drive, these claims must be dismissed as a matter of law.

B. Any claims by other Plaintiffs based on negligent acts which occurred prior to September 26, 2021 are barred by the statute of limitations

As asserted *supra*, to the extent that any claims by any named Plaintiff arise out of or are related to tenancies that occurred, or breaches that are alleged to have occurred prior to September 26, 2021—the same are barred by the applicable statute of limitations as Florida law requires that any suit in negligence must be brought within 4 years. Sec. 95.11(4), Fla. Stat. (1949).

iii. Plaintiffs' Complaint fails to allege a cause of action for Gross Negligence (Count III)

Gross negligence is defined by the Florida Statutes as "conduct . . . so reckless or wanting in care that it constituted a conscious disregard or

indifference to the life, safety, or rights of persons exposed to such conduct." Fla.Stat.Ann. § 768.72 (West)[10]. The only conduct of Defendants alleged is that there was the existence of mold in the various relevant addresses on the Premises. This is not an example of gross negligence, but a common occurrence in Florida and elsewhere. Specifically, though not attached to Plaintiffs' Complaint, Plaintiffs concede that the relevant lease contracts included specific warnings about moisture buildup and mold prevention. Compl. ¶79. Moreover, despite not attaching the same to Plaintiffs' Complaint, Plaintiffs specifically concede that the relevant Resident Guidelines and Community Handbook dedicated an entire section to mold—instructing residents to immediately report any evidence of water leaks, excessive moisture, mold growth, HVAC malfunctions, and musty odors. Id.

In the instant case—again—Plaintiffs failed to attach any lease contract, work order, etc., for this Court's consideration. As such, Plaintiffs cannot prove any material violation and no cause of action for gross

[10] "Gross-negligence" was not statutorily defined at the time of cession. *See generally* Sec. 768, *et seq.*, Fla. Stat. (1949) https://library.law.fsu.edu/Digital-Collections/FLStatutes/docs/1949/1949TXLIIIC768.pdf (last visited October 27, 2025)

negligence exists as a matter of law. As such, Count III of Plaintiffs' Complaint must be dismissed.

A. Any claims by other Plaintiffs based on gross negligent acts which occurred prior to September 26, 2021 are barred by the statute of limitations

To the extent that Plaintiffs' claims arise out of or are related to tenancies that occurred, or breaches that are alleged to have occurred prior to September 26, 2021—the same are barred by the applicable statute of limitations as Florida law requires that any suit in gross negligence must be brought within 4 years. Sec. 95.11(4), Fla. Stat. (1949).

iv. Plaintiffs' Complaint fails to allege a cause of action for Nuisance (Count IV)

Nuisance is based on the fundamental rule that every person should so use his own property as not to injure that of another, as expressed in the maxim "sic utere tuo ut alienum non laedas." Cason v. Florida Power Co., 76 So. 535, 536 (1917); Reaver v. Martin Theatres of Fla., 52 So. 2d 682, 683 (Fla. 1951); Jones v. Trawick, 75 So. 2d 785, 787 (Fla. 1954). "Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or occupation physically uncomfortable may become a nuisance and may be restrained." Palm Corp.

v. Walters, 4 So. 2d 696, 699 (1941); Ford v. Dania Lumber & Supply Co., 7 So. 2d 594, 595 (Fla. 1942). The proper measure of damages if Plaintiff prevails "should be limited to the loss of the use value of his property during the period of the nuisance." Ford, 7 So.2d at 595.[11]

In addition to Plaintiffs' failure to attach the relevant lease contracts and identify all relevant provisions contained therein, Plaintiffs' allegations consist of nothing more than conclusory statements of opinion—rather than allegations of fact—and fail to plead requisite injury/damage (loss of use). As such, Count IV of Plaintiffs' Complaint must be dismissed.

A. Any claims by other Plaintiffs based on nuisance which occurred prior to September 26, 2021 are barred by the statute of limitations

To the extent that the claims asserted by Plaintiffs arise out of or are related to tenancies that occurred, or breaches that are alleged to have occurred prior to September 26, 2021 are barred by the applicable statute of limitations as Florida law requires that any suit for nuisance must be brought within 4 years. Sec. 95.11(4), Fla. Stat. (1949).

[11] In this case, the Court found the nuisance to be of remedial nature—in that "it may be abated and in that event the damage would cease." Ford, 7 So.2d at 595.

**e. Plaintiffs' Immaterial, Impertinent, And Scandalous Accusations Must Be Stricken From Plaintiffs' Complaint**

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading[12] any redundant, immaterial, impertinent, or scandalous matter." "An 'immaterial matter' is one that has no important relationship to the claim or defense and an 'impertinent' matter is one that does not pertain to the issue(s) in question." S.D. v. St. Johns Cnty. Sch. Dist., No. 3:09-CV-250-J-20TEM, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009); 126th Avenue Landfill, Inc. v. Pinellas County, No. 8:09–CV–307–T–33TBM, 2009 WL 1544030, at *2–3 (M.D.Fla. June 3, 2009); Wright & Miller, *supra,* at 458–63. Further, "a matter is scandalous when it improperly casts a derogatory light on someone." S.D., No. 3:09-CV-250-J-20TEM, 2009 WL 1941482, at *1; Pardo v. Fleetwood Motor Homes of Pa., Inc., No. 2:05–CV–359–FTM–33DN, 2005 WL 3113215, at *2 (M.D. Fla. Nov. 20, 2005) (citing Wright & Miller, Federal Practice & Procedure: Civil § 1382 at 465–66 (3d ed. 2004).[13] "Generally, motions to strike allegedly immaterial matters are not

[12]Pleadings traditionally include the Complaint, Answer, Counterclaim, and Answer to a Counterclaim. *See* Ayers v. Consolidated Construction, 07-123, 2007 WL 4181910 at *1 (M.D. Fla. Nov. 26 2007).

[13]*See also* Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir.1992) (striking as scandalous paragraphs in the complaint that alleged the defendants in (footnote continued)

favored and such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues to be litigated." S.D, No. 3:09-CV-250-J-20TEM, 2009 WL 1941482, at *1; U.S. Dental Instit. v. American Ass'n of Orthodontists, 396 F.Supp. 565, 583 (N.D.Ill.1975).

Despite the same, federal district courts "have broad discretion in disposing of motions to strike" under Rule 12. Microsoft v. Jesse's Computers, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (quotes and citation omitted). Although Rule 12(f) should be used sparingly, it is appropriate here where Plaintiffs' allegations are obviously false, have little or no bearing on the adjudication of their claims, and only serve to prejudice and defame Defendants. *See* Wlodynski v. Ryland Homes, No. 8:08-cv-361-JDW-MAP, 2008 WL 2783148 at *1 (M.D. Fla. July 17, 2008) (Whittemore, J.)

---

that action intentionally caused a salmonella outbreak that killed and injured people in order to deprive the plaintiffs of their jobs at a dairy); Alvarado–Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir.1988) (striking from a complaint superfluous descriptions that compared an employment resignation process to a "concentration camp" where the plaintiffs were "brainwashed" and "tortured"); S.E.C. v. Lauer, No. 03–80612–CIV–MARRA, 2007 WL 1393917, at *2 (S.D. Fla. April 30, 2007) (striking as scandalous a letter that accused attorneys of immoral and unethical conduct without any legitimate basis).

(approving a Report and Recommendation that noted that "[w]hile courts generally disfavor motions to strike, if the allegations have no possible relation to the controversy, may confuse the issues, or may cause prejudice to one of the parties, a court may grant the motion."); Williams v. Eckerd Family Youth Alternative, 908 F.Supp. 908, 910 (M.D. Fla. 1995). Even if Plaintiffs somehow assert that these issues have some tangential relation to this controversy, "relevant portions of a complaint may be stricken where they are scandalous and are set out in needless detail." Id. That purpose would be served here by dispensing with each and every scandalous allegation contained within Plaintiffs' Complaint which cannot possibly have any bearing on the adjudication of this matter.

Specifically, justice requires the following paragraphs be stricken:

> **Introduction** (Compl., p. 1-3): All paragraphs within the unnumbered **Introduction** section of Plaintiffs' Complaint contain immaterial, impertinent, scandalous language that is highly prejudicial/defamatory, have little or no bearing on the adjudication to the issues at question, and serve to detract from the dignity of this Court (ex: "cartel-like hold" and "abuses, sickens, and traumatizes American military families"). Specifically, Plaintiffs' use of repugnant words replete with tragic/criminal connotations are superfluous descriptions and not substantive elements of the cause of action.
>
> **Military Housing Conditions Remained Poor Under the MHPI** (Compl., p. 17-19): Paragraphs 59, 60, and 63 contain

immaterial, impertinent, scandalous language that is highly prejudicial/defamatory, have little or no bearing on the adjudication to the issues at question, and serve to detract from the dignity of this Court.

**The Unsafe and Unhealthy Housing Conditions at MacDill** (Compl., p. 22-25): Paragraphs 74, 75, 76, 77, 78, 79, 80, 81, 86, and 87 contain immaterial, impertinent, scandalous language that is highly prejudicial/defamatory, have little or no bearing on the adjudication to the issues at question, and serve to detract from the dignity of this Court.

**Defendants' Pattern of Concealment and Inadequate Remediation** (Compl., p. 25-27): Paragraphs 88, 89, 90, 91, 92, 93, and 94 contain immaterial, impertinent, scandalous language that is highly prejudicial/defamatory, have little or no bearing on the adjudication to the issues at question, and serve to detract from the dignity of this Court.

**f. TMO Must Be Dismissed as Plaintiffs' Only Claims Against TMO are an Attempt to Pierce the Corporate Veil and Not On Any Acts by TMO**

Piercing the corporate veil is an extraordinary remedy and will not be granted absent a showing of improper conduct. *See* Lipsig v. Ramlawi, 760 So.2d 170 (Fla. 3d DCA 2000). A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them. *See* Am. States Ins. Co. v. Kelley, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984). To "pierce the corporate veil" three factors must be proven:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact

> non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987, 990 (Fla. 4th DCA 1998) (*quoting* In re: Hillsborough Holdings Corp., 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)); *see also,* Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).

As a threshold matter, piercing the corporate veil is not itself a cause of action. *See* Turner Murphy Co. v. Specialty Constructors, Inc., 659 So.2d 1242, 1245 (Fla. 1st DCA 1995). Rather, it is a legal doctrine applied to hold a corporation's shareholders liable for the corporation's debts. This "showing of improper conduct" requires proof that "the corporation was actually organized or used to mislead creditors or to perpetrate a fraud upon them." Wurtzebach v. Flooring Depot FTL, Inc., 384 So.3d 251, 255 (Fla. 4th DCA 2024) (allegations that shareholder commingled business and personal assets to make personal purchases, without more, failed to meet support

piercing the veil) (*citing* Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1119–20 (Fla. 1984)).

The overwhelming weight of authority is to the effect that courts will look through the screen of corporate entity to the individuals who compose it only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *See* Dania Jai Alai , 450 So.2d at 1117.

"The Florida Supreme Court has imposed a strict standard upon those wishing to pierce a corporate veil." Seminole Boatyard, Inc. v. Christoph, 715 So.2d at 990. "In general, the separateness that is a basic part of the corporate form is not to be disregarded, and a court will do so … only in exceptional circumstances." Molenda v. Hoechst Celanese Corp., 60 F.Supp.2d 1294 (S.D. Fla. 1999), *aff'd*, 212 F.3d 600 (11th Cir. 2000).

Facts showing that one corporation provides services to a related corporation will not pierce the corporate veil. "The facts that the heads of a subsidiary corporation report from time to time to the board of directors of the parent organization, and that the parent company does the payroll, are

insufficient, by themselves, to state a prima facie case [when there] was no evidence that the funds for the payroll were not supplied by the subsidiary." Arango v. Reyka, 507 So.2d 1211 (Fla. 4th DCA 1987).

Therefore, to obtain a judgment holding TMO liable for acts by the other Defendants and their alleged breaches, Plaintiffs must establish that: (1) TMO dominated and controlled the other Defendants to such an extent that the other Defendants had no existence independent of TMO and the other Defendants were the mere instrumentalities or alter ego of TMO; (2) that the other Defendants corporate form were used fraudulently or for an improper purpose; and (3) that TMO's fraudulent or improper use of the other Defendants was the cause in fact of Plaintiffs' injuries. Plaintiffs cannot meet this burden.

Specifically, Plaintiffs' Complaint has not made any allegations which would overcome this burden as the only claims against TMO are that all of the other Defendants are "members of the 'Michaels conglomerate', at the top of which sits TMO. . . ." Compl. ¶¶69-70. Without more, Plaintiffs have no viable claims against TMO and TMO should be dismissed with prejudice.

**g. MMH LLC Must Be Dismissed as Plaintiffs' Only Claims Against MMH LLC is a single allegation of the existence of a contract, but the applicable contract is not attached to the Original Complaint**

The only allegation specifically against MMH LLC is that "MMH signed many of the Plaintiffs' leases on behalf of Defendant AMC…". Compl. ¶46. However, Plaintiffs have failed to attach any operable lease containing the signature of "MMH".

A written contract or document that forms the basis of a claim for relief shall be attached to or incorporated in the pleading and any exhibit that is attached to the pleading is considered a part of that pleading. *See* FLA. R. CIV. P. 1.130. Further, where the Plaintiff fails to attach the relevant contract while the complaint explicitly references the contract, the Court should be able to consider the entirety of the contract in its decision on a motion to dismiss in order to "encourage the speedy, just and inexpensive determination of every action." Here, Plaintiffs failed to attach any lease for any of the Plaintiffs, let alone a lease signed by "MMH". As such, MMH LLC must be dismissed.

## III. CONCLUSION

For all of these reasons, Defendants move to dismiss the Complaint in its entirety.

Respectfully submitted,
LEWIS BRISBOIS BISGAARD & SMITH LLP

***s/Caitlin A. Polly***
JONATHAN G. KEPKO
Florida Bar Number 67375
Email: jonathan.kepko@lewisbrisbois.com;
flcourtmail@lewisbrisbois.com
stephanie.pineiro@lewisbrisbois.com
CAITLIN A. POLLY
Florida Bar Number 1007707
Email: caitlin.polly@lewisbrisbois.com;
flcourtmail@lewisbrisbois.com;
401 East Jackson Street, Suite 3400
Tampa, Florida 33602
Phone: 813.739.1900; Fax: 813.739.1919
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court by using the Clerk's CM/ECF System, which will send a Notice of Electronic Filing to the following:

| | |
|---|---|
| **Robert J. McKee:** | rmckee@themckeelawgroup.com |
| **Vincent J. Colatriano**: | vcolatriano@cooperkik.com |
| **Michael Weitzner**: | mweitzner@cooperkik.com |
| **Kristina Baehr:** | Kristina@well.law |
| **Christopher LaCour:** | Chris@well.law |

***s/Caitlin A. Polly***
Attorney

# D's EX 1

# FLORI DEPARTM T of STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

*I, Amy L. J on, Division Director, Divisio Library and Information Services, Florida Depart of State, hereby certify that rec of the Administrative Code, Register and Laws Se were transferred to the custody e State Archives of Florida pursuant to the provisions Chapter 257, Florida Statutes, and I am, by the terms of that transfer, the official odian of those records.*

*urther certify that the attached is e and correct copy of a portion of that record in the e Archives of Florida, the origin which may be found in Series 1115, volume 2.*

***W NESS MY SIGNATURE**, this Day of January, 2020.*

***AMY L. J SON***
Director, sion of Library and Information Services

*BY:* usan Scheid
*State Archives of Florida*

DEED OF CESSION

COPY
reproduced by
FLORIDA STATE ARCHIVES
DEPARTMENT OF STATE
R.A. GRAY BUILDING
Tallahassee, Florida 32399-0250
Series S1115 Carton Vol. 2
File Folder

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the following described lands, within the limits of the County of Hillsborough, State of Florida, have been acquired by purchase and condemnation, and are now being held by the United States of America for the purpose of erecting and maintaining thereon forts, magazines, arsenals, dockyards, and other needful buildings, or any of them, as contemplated and provided in the Constitution of the United States, to-wit:

All those tracks or parcels of land situate, lying and being in the County of Hillsborough, State of Florida, more particularly described as follows:

PARCEL I

Beginning at a point, being the intersection of a line parallel to and 1590 feet distant northerly from the south line of Section 19, Township 30 South, Range 18 East, with the mean high water line of Tampa Bay; and (1) thence running easterly parallel to and 1590 feet distant northerly from the south line of said Section 19 and the south line of Section 20 to a point 408.5 feet west of the east line of said Section 20; (2) thence northeasterly a distance of 667.5 feet to a point 20 feet distant at right angles easterly from the west line of Section 21, Township 30 South, Range 18 East, which point is also 2099.8 feet northerly from the south line of Section 21, when measured parallel to the west line of said Section 21; (3) thence northerly parallel to and 20 feet easterly at right angles from the west line of the said Section 21, to a point on the north line of said Section 21; (4) thence easterly along said north line of said Section 21, 5 feet to a point; (5) thence northerly parallel to and 25 feet distant easterly from the west line of Section 16, 50 feet to a point; (6) thence easterly parallel to the south line of Section 16, 225 feet to a point; (7) thence south at right angles to the said south line of said Section 16, 48.95 feet to a point 1.05 feet north at right angles from the said south line of said Section 16; (8) thence easterly on a course south 88° 15' 49" east 204 feet, more or less, to a point; (9) thence south to a point on the south line of Section 16; (10) thence east along said south line of Section 16, 25 feet to a point; (11) thence north, at right angles to said south line of said Section 16, 4 feet; (12) thence in a northeasterly direction 137.29 feet, more or less, along the circular arc of a 5° 41' 58" curve, having a radius of 1005.37 feet to a point, said point being the point of curvature of said 5° 41' 58" curve; (13) thence northerly 7° 49' 29" east 239.16 feet, more or less, to a point on the west right-of-way line of the existing MacDill Air Force Base Railroad Spur; (14) thence in a southerly direction a distance of 55.75 feet, more or less, along said west right -of-way line of the existing MacDill Air Force Base Railroad Spur to a point, said point being the point of curvature of a 9° 34' 15" curve having a central angle 91° 10' 22"; (15) thence in a southeasterly direction a distance of 337.25 feet, more or less, along the curcular arc of said 9° 34' 15" curve having a radius of 498.69 feet to a point, which is the intersection of the west right-of-way of said MacDill Air Force Base Railroad Spur and the south boundary line of said Section 16, said point being 611 feet distant easterly from the southwest corner of Section 16; (16) thence easterly along the south boundary of said Section 16, 86 feet, more or less, to the point of intersection of the east right-of-way line of said MacDill Air Force Base Railroad Spur and the said south boundary of said Section 16; (17) thence north at right angles to said south line of said Section 16, 2.83 feet, more or less, to a point; (18) thence on a course south 88° 15' 49" east 653.42 feet, more or less, to a point which is 5.58 feet northerly at right angles from the said south line

of said Section 16; (19) thence on a course south 88° 6' 44" east,1326.38 feet, more or less, to a point which is 7.72 feet north at right angles from the said south line of said Section 16;(20) thence on a course north 89° 2' 17" east, 1320. 1320.14 feet, more or less to a point; (21) thence on a course north 88° 52' 21" east 50 feet, more or less, to a point which is 6.57 feet north of the south line of said Section 16; (22) thence on a course north 88° 52' 21" east 1272.47 feet, more or less, to a point on the east line of said Section 16, 5.21 feet north of the southeast corner of said Section16; (23) thence on a course north 89° 24' 57" east 1318.5 feet, more or less, to the southwest corner of the Southeast 1/4 of the Southwest 1/4 of said Section 15; (24) thence northerly along the west line of said SE /14 of SW 1/4 to the northwest corner thereof;(25) thence easterly along the north line of said SE 1/4 of SW 1/4 to the northeast corner thereof; (26) thence southerly along the east line of said SE 1/4 of SW 1/4 to the southeast corner thereof; (27) thence easterly along the south line of said section 15 to the mean high water line of Hillsborough Bay; (28) thence along the mean high water line of Hillsborough Bay in a southeasterly direction, intersecting and crossing the east line of Section 22, the south line of Section 23, the south line of Section 26, and continuing along the mean high water line of Hillsborough Bay and Tampa Bay in a southwesterly, southerly,westerly, northwesterly and northerly direction, intersecting and crossing the west line of Section 35, the west line of Section 34, the west line of Section 33, the north line of Section 32, the west line of Section 29, and the north line of Section 30, to the point at which said mean high water line of Tampa Bay is intersected by a line parallel to and 1590 fett distant northerly from the south line of Section 19; all of said section being in Township 30 South, Range 18 East, and which last mentioned point is the point of beginning. Containing 5,901.62 acres of land, more or less.

PARCEL II

Lots 1 and 2 of Block 2 of Gandy Boulevard Subdivision, according to map or plat thereof, as same is recorded in the public records of Hillsborough County, Florida, in Deed Book 711, Page 67; containing .29 of an acre of land, more or less.

The above described lands are shown on map attached hereto and made a part hereof.

AND WHEREAS, application in writing has been made by the United States of America to me, Fuller Warren, Governor of the State of Florida, to cede to the said United States of America exclusive jurisdiction over said lands;

NOW, THEREFORE, I, Fuller Warren, Governor of the State of Florida, in the name and by the authority of said State, and prusuant to the statutes of said State in such cases made and provided, do hereby cede to the United States of A merica exclusive juridiction over said lands so held;

PROVIDED, HOWEVER, that said cession of jurisdiction is made upon the express condition that the said State of Florida retains and shall have concurrent jurisdiction with the United States in and over said lands and every portion thereof so far that all process, civil or criminal, issuing under authority of the State of Florida, or any of the courts or judicial officers thereof, may be executed by the proper officers thereof upon any person or persons amenable to same, within the limits and extent of said lands in like manner and like effect as if said statutes of the State of

Florida had never been passed and this instrument had never been executed; saving, however, to the United States security to their property within said limits and extent, and exemption of the same from any taxation under the laws of the State while the same shall continue to be owned and occupied by the United States for the purposes above expressed and not otherwise, and provided, further, that this cession is made and shall in all things be subject to the terms and effect of the statutes of the State of Florida in such cacses made abd provided, the same as if such statutes were herein fully set forth.

IN TESTIMONY WHEREOF, I, Fuller Warren, Governor of the State of Florida, have hereunto set my hand and caused this instrument to be countersigned by the Secretary of State and sealed with the Great Seal of the State of Florida, at the Capital, at Tallahassee, this 29th day of March, in the year of our Lord, One thousand Nine Hundred and Fifty.

Fuller Warren
Governor of the State of Florida.

(SEAL)

ATTEST

R. A. Gray, Secretary of State of the State of Florida.

STATE OF FLORIDA )
0 ss
OFFICE OF SECRETARY OF STATE )

I, R. A. Gray, Secretary of State of the State of Florida, do hereby certify that the foregoing Deed of Cession has been duly recorded in this office in Deed Book "B" pages 217-18-19.

GIVEN under my hand and the Great Seal of the State of Florida, at Tallahassee, the Capital, this the 4th day of April, A. D. 1950

(SEAL)

R. A. Gray

Secretary of State of
the State of Florida.