UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DILLON MULLINS et al,

    Plaintiffs,

v.

                              CASE NO. 8:25-cv-02637-SDM-AAS

THE MICAHELS ORGANIZATION,
LLC, et al,

    Defendants.

_____/

**<u>ORDER</u>**

Alleging nineteen state-law claims arising from the condition of private housing on MacDill Air Force Base (MacDill), forty service-member households comprising one hundred seventy-four persons sue (Doc. 37) The Michael's Organization, LLC (Michael's),[1] AMC East Communities, LLC (AMC),[2] and MMS Air Force, LLC (MMS), the entities that managed the private housing on MacDill.[3] The defendants move (Doc. 43) to dismiss, the plaintiffs respond (Doc. 48) in opposition, and the defendants reply. (Doc. 51).

---

[1] Michael's, incorporated and based in New Jersey, "conducted many of the leasing and management activities relating to MacDill housing." (Doc. 37 at ¶¶ 41 and 44).

[2] AMC, incorporated in Delaware and based in New Jersey, "is listed as the 'Owner' on the leases signed by Plaintiffs." (Doc. 37 at ¶ 42).

[3] MMS, incorporated and based in New Jersey, "has acted as property manager with respect to MacDill housing." (Doc. 37 at ¶ 43).

## DISCUSSION

### The Federal Enclave Doctrine Bars State-Law Claims That Did Not Apply When MacDill Air Force Base Became a Federal Enclave

"The federal enclave doctrine gives Congress the power to 'exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature . . .'" *King v. Akima Global Servs., LLC*, 774 F. App'x 617, 620 (11th Cir. 2019) (quoting U.S. Const. art. I § 8, cl. 17). "[W]hen an area in a State becomes a federal enclave, only the [state] law in effect at the time of the transfer of jurisdiction continues in force as surrogate federal law." *Parker Drilling Mgmt. Servs., Ltd. V. Newton*, 587 U.S. 601, 621 (2019) (internal quotation marks omitted).

MacDill become a federal enclave in 1950 when Florida validly ceded to the United States the territory now constituting MacDill.[4] (Doc. 43-1) *United States v. Boling*, No. 8:19-cr-518-T-36JSS, 2020 WL 1931328 (M.D. Fla. Apr. 2, 2020), *report and recommendation adopted*, 2020 WL 1929465 (M.D. Fla. Apr. 21, 2020) (recognizing MacDill as a federal enclave); *Jose A. Murillo Eid et al. v. Michaels Mgmt. Servs.*, LLC, Case No. 8:24-cv-1544-TPB-AAS, Doc. 55 at 6 (M.D. Fla. Mar. 26, 2025) (recognizing the same)."Therefore, to the extent

---

[4] Citing *King v. Akima Global Services, LLC*, 775 F. App'x 617, 621 (11th Cir. 2019), the plaintiffs argue that judicial notice of MacDill's federal-enclave status is improper. The present action is readily distinguishable from *King*, which held that the record contained insufficient evidence to establish that the territory in question constituted a federal enclave. Here, the date and conditions of MacDill's cession to the United States are established by the 1950 "Deed of Cession," which appears in the records of the Florida Department of State and which the defendants attach as an exhibit. (Doc. 43-2).

state law is to be applied to events occurring on MacDill, it is Florida state law as it existed in 1950, when the transfer of jurisdiction took place." *Eid*, Case No. 8:24-cv-1544-TPB-AAS, Doc. 55 at 5.

The plaintiffs argue that 28 U.S.C. § 5001(b) creates an exception to the federal enclave doctrine because the complaint concerns "personal injuries."[5] The statute provides that "[i]n a civil action brought to recover on account of an injury sustained in [a place subject to the exclusive jurisdiction of the United States within a State], the rights of the parties shall be governed by the law of the State in which the place is located." Although the plaintiffs urge a broad reading of the term "injury," most courts reject that construction and limit the statutory exception to a claim for physical injury. *See, e.g., Colon v. United States*, 320 F. Supp. 3d 733, 746 (D. Md. 2018).[6]

As explained in *Shurow v. Gino Morena Enterprises, LLC*, the term "personal injury" admits of only two plausible interpretations: "(1) a physical

---

[5] The exceptions to the general rule that state law as of the date of cession applies within the federal enclave are "(1) where Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right to legislate over specific matters at the time of cession; and (3) where minor regulatory changes modify laws existing at the time of cession." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012).

[6] *See also Daniels v. AETC II Privatized Hous., LLC*, No. 5-19-CV-01280-RBF, 2023 WL 2558135, at *3 (W.D. Tex. Jan. 4, 2023), *aff'd sub nom. Vinales v. AETC II Privatized Hous., L.L.C.*, No. 24-50113, 2025 WL 1779366 (5th Cir. June 27, 2025) ("Most district courts faced with this issue have treated the term "injury" in § 5001(b) as meaning only physical injuries. *See, e.g., Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 8 (D.P.R. 1998) (reviewing legislative history). A few unreported district court decisions have extended this statute to include "purely emotional injuries." *See, e.g., Andersen v. Lewis McChord Communities LLC*, No. 3:21-CV-05391-DGE, 2022 WL 874774, at *4 (W.D. Wash. Mar. 24, 2022) (relying on modern definitions). Apparently no court has ruled that § 5001(b) encompasses economic injuries.

injury sustained by one's person or (2) any injury a person might sustain." No. 3:16-CV-02844-L-KSC, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017) (Lorenz, J.). Under the latter, broader application, Section 5001(b) would theoretically encompass the full spectrum of any Article III "injury-in-fact" and effectively undermine the federal enclave doctrine. For this reason, *Shurow* limits Section 5001(b) to a claim arising from physical injury.

Even apart from the meaning of "injury," the text of Section 5001(b) does not accomplish what the plaintiffs suggest. The subsection concerns the place of injury and provides that the parties' rights are governed by "the law of the State in which the place is located." But the statute says nothing about the content of that law — that is, whether the governing state law is the law in force at the time of cession or the law enacted afterward. "References to 'applicable law' do not evince an intent to apply any specific law." *Vinales v. AETC II Privatized Housing, LLC*, 146 F.4th 434, 442 (5th Cir. 2025) (holding that a choice of law provision in a contract executed in a federal enclave does not imply that the contract requires application of current state law). Therefore, even if Section 5001(b) applies, the statute leaves open the question of whether the governing Florida law is the law existing at the time Florida ceded MacDill to the United States in 1950 or the law enacted thereafter.

The plaintiffs' reliance on the Florida choice-of-law provisions in the leases is equally unavailing. The plaintiffs cite *Johnson v. Lendlease (US) Public Partnerships, LLC*, No. 7:21-cv-188-D, 2022 WL 2447091 (E.D.N.C. July 5,

- 4 -

2022), but, as Judge Barber observed in *Eid*, *Johnson* cites no persuasive authority for the proposition that private parties — neither of which is the United States — may contractually require the application of modern state law within a federal enclave. At least one court has expressly criticized *Johnson*. See *Fischer v. Fort Belvoir Residential Communities, LLC*, No. 1:22-cv-286, 2024 WL 666067, at *5 (E.D. Va. Feb. 16, 2024) (Alston, J.). I agree with Judge Alston's conclusion that there is "no authority in support of [the] conclusion that choice-of-law language can effectively abrogate the federal enclave doctrine." And even if the leases validly select Florida law, the clause still leaves unresolved the same question presented by Section 5001(b): whether the Florida law applicable within the enclave is the law in force when Florida ceded Mac-Dill in 1950 or the law enacted afterward. *See Vinales*, 146 F.4th at 442.

In summary, the plaintiffs' preferred application of the term "injury," which "encompasses any injury to a person's body, emotions, or reputation," is overly broad. (Doc. 48 at 9–10). Because the complaint alleges "emotional harm" and "financial losses" but alleges no physical injury resulting from any act or omission of the defendants, the plaintiffs fail to establish the applicability of 28 U.S.C. § 5001(b) to any claim.[7] (Doc. 37 ¶¶ 63–64). Moreover, even if Section 5001(b) applied, the statute specifies only that the parties' rights are governed by "the law of the State in which the place is located" and does not

---

[7] The vague and conclusory allegation of "emotional harm [that] has manifested in physical injuries" misses the mark. (Doc. 37 at § 63).

- 5 -

identify the content of that law — that is, whether the governing state law is the law in force at the time of cession or the law enacted afterward. Nor do the leases' Florida choice-of-law provisions alter that conclusion, because private parties cannot contractually abrogate the federal enclave doctrine or require the application of modern state law within a federal enclave. For these reasons, and because Florida ceded MacDill Air Force Base to the United States in 1950, the governing state law within the enclave remains the law of Florida as it existed at the time of cession.

*Count V: Negligent Infliction of Emotional Distress*

The Supreme Court of Florida rejected recovery for negligent infliction of emotional distress in 1893. *Int'l Ocean Tel. Co. v. Saunders*, 32 Fla. 434, 14 So. 148, 152 (1893) ("[The plaintiff's] only injury, resulting directly from such breach of contract, was mental suffering . . . . The resultant injury . . . is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value."). The Supreme Court of Florida upheld *Saunders* in 1941 and 1950. *Dunahoo v. Bess*, 146 Fla. 182, 200 So. 541 (1941); *Kirksey v. Jernigan*, 45 So. 2d 188 (Fla. 1950) ("[T]here can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved."). The claim is barred.

### Count VI: Intentional Infliction of Emotional Distress

The Supreme Court of Florida recognized the tort of intentional infliction of emotional distress in 1958. *Slocum v. Food Fair Stores of Fla., Inc.*, 100 So. 2d 396, 398 (Fla. 1958) ("The case is one of first impression in this jurisdiction, and [the plaintiff] contends that this Court should recognize the existence of a new tort, and independent cause of action for intentional infliction of emotional distress."). The claim is barred.

### Count VII: Warranty of Habitability

The warranty of habitability, recognized under Section 83.51, Florida Statues, was codified by the Florida legislature in 1974. *Eid*, No. 8:24-cv-01544-TPB-AAS, 2025 WL 917820, at *3 ("Florida . . . had no minimum building code before 1974."). The claim is barred.

### Count IX: Negligence Per Se

The Supreme Court of Florida recognized the doctrine of negligence *per se* as early as 1907. *Atl. Coast Line R.R. Co. v. Crosby*, 43 So. 318, 336 (Fla. 1907). The plaintiffs' negligence *per se* claim relies on alleged violations of Section 468.84, et seq., Florida Statutes (the "Mold-Related Services Licensing Program"), and Sections 19-47 and 19-231 of the Tampa Code of Ordinances ("Offensive conditions declared a public nuisance; prohibited conditions enumerated" and "Standards for dwellings generally").

Section 468.84, Florida Statutes, took effect in 2010, and no substantially similar predecessor statute predates the cession of MacDill. *See* ch. 2007-

- 7 -

235, § 1, 2007 Fla. Laws. Accordingly, any claim of negligence per se predicated on Section 468.84 is barred.

The ordinances comprising Sections 19-47 and 19-231 of the current Tampa Code were enacted in 1989, 1990, or 1996. *Tampa, Fla., Code of Ordinances* §§ 19-47, 19-231. [8] Despite the recency of these provisions, substantially similar requirements existed in the 1928 Code of the City of Tampa, which remained in effect, as amended, at the time of MacDill's cession. Chapter 2, Section 122 of the 1928 Code provides that "[w]henever any building in the City of Tampa, by reason of age, decay, or other causes, becomes dangerous to its occupants or to the occupants of surrounding buildings, or becomes dangerous on account of fire or other reasons, or becomes a menace to public health, the same is hereby declared a nuisance." [9] Likewise, the 1926 Code imposed comparable housing requirements. *See, e.g., City of Tampa Code* ch. 2, § 208 ("The roof of every tenement house shall be maintained watertight, and rainwater therefrom shall not discharge into the yards or courts, or over the sidewalk into streets."). Although the 1928 provisions differ in some technical respects from the current ordinances, the differences represent only "minor … changes

---

[8] Citing Ord. No. 89-269, § 2(48-32), 10-12-89; Ord. No. 90-124, § 2(48-32), 5-17-90; Ord. No. 89-269, § 2(48-171), 10-12-89; Ord. No. 90-124, § 2(48-171), 5-17-90; Ord. No. 96-204, § 33, 9-26-96.

[9] Compare to Section 19-47 of the current Tampa Code: "Nothing shall be allowable on the premises within the corporate limits of the city provided for in this chapter that shall in any way be offensive or noxious by reason of the emission of odors, gases, dust, smoke, light, vibration or noise . . . nor shall anything be constructed or maintained that would in any way constitute an eyesore or nuisance to adjacent property owners or residents or to the community."

modifying laws existing at the time of cession." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012).

However, the land now constituting MacDill was not within the city limits of Tampa at the time of cession. A contemporaneous United States Geological Survey map shows the southern tip of the Interbay Peninsula — where Mac-Dill is located — outside the municipal boundaries of Tampa. *See* Tampa–Hillsborough County, Fla., U.S. Geological Survey Topographic Map (1947), available at https://pastmaps.com/map/tampa-hillsborough-county-fl-usgs-topo-1947-1#11.67/27.9247/-82.4376. Because Tampa's ordinances did not apply to the territory at the time of cession, any claim of negligence *per se* predicated on any Tampa Ordinance, including Sections 19-47 and 19-231, is barred.[10]

### Count X: Medical Monitoring

"Florida recognize[d] a cause of action for medical monitoring" in 1999. *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. Dist. Ct. App. 1999). The claim is barred.[11]

---

[10] Also, the Deed of Cession nowhere mentions the city of Tampa — a notable omission if the ceded territory were located within Tampa's municipal limits at the time of cession. (Doc 43-1) ("WHEREAS, the following described lands, within the limits of the County of Hillsborough, State of Florida, have been acquired by purchase and condemnation, and are now being held by the United States of America . . .").

[11] The plaintiffs argue that "the medical monitoring claim is a personal injury claim under [28 U.S.C.] § 5001(b)" and therefore exempt from the federal enclave doctrine. But *Petito*, on which the plaintiffs rely, requires no physical injury and instead permits recovery upon a showing of "exposure greater than normal background levels . . . to a proven hazardous substance." 750 So. 2d at 106. In any event, the plaintiffs fail to allege in any claim a physical injury sufficient to qualify under § 5001(b).

*Counts XII and XIII: Florida Deceptive and Unfair Trade Practices Act (FDUTPA)*

The FDUPTA — codified in Section 501.21, Florida Statutes — was enacted by the Florida Legislature in 1973. *See* 2007 Fla. Sess. Law Serv. Ch. 2007-235 (C.S.C.S.C.S.S.B. 2234). Each claim under the FDUTPA is barred.

*Counts XIV and XV: Negligent Misrepresentation*

The Supreme Court of Florida, relying on the *Restatement (Second) of Torts*, published in 1977, recognized a cause of action for negligent misrepresentation in 1997. *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997). The claim is barred.

*Counts XVI, XVII, XVIII, and XIX: Fraud*

Although the plaintiffs are correct that Florida courts in or before 1950 did not employ the terms "fraudulent inducement" or "fraudulent concealment" to describe a distinct claim for relief, the elements of each claim substantially equal the elements of fraud generally and, in any event, represent only "minor . . . changes modify[ing] laws existing at the time of cession." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012). The claims are not barred.

**The Plaintiffs Are Improperly Joined**

Rule 20(a)(1), Federal Rules of Civil Procedure, provide that "[p]ersons may join in one action as plaintiffs if . . . they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences." Spanning seventy-seven pages and four hundred forty-eight

- 10 -

paragraphs, the complaint recounts the factual history of forty households comprising one hundred seventy-four persons. Each household entered a distinct lease, preceded by distinct negotiations, moved into housing on a distinct date, and allegedly encountered mold or water damage under distinct circumstances. Each response to the condition of each house (and the form and content of each complaint that prompted each response) likewise differed from household to household. Amidst this multiplicity of facts, the complaint names in each count — notwithstanding a few exceptions — all forty households as plaintiffs and all three entities as defendants. The complaint fails to identify which factual allegations correspond to which claims or which defendant is responsible for which alleged conduct. Instead, the complaint aggregates dozens of distinct disputes without identifying a common transaction or occurrence that would permit the plaintiffs to proceed together under Rule 20(a)(1). Consequently, no judge, no jury, no defendant, and, frankly, no other reader could reasonably ascertain which allegations correspond to which claims, or which defendants are putatively responsible for which allegations.

### The Complaint Fails to Establish Subject Matter Jurisdiction

The complaint alleges, without factual support, the existence of subject-matter jurisdiction under 28 U.S.C. §§ 1332(d)(2) and (d)(11). Section 1332(d)(2) applies only to a class action, and the present action is neither a class action nor likely capable of class certification. Nor does Section 1332(d)(11) supply jurisdiction. Section 1332(d)(11)(B)(ii)(I) expressly

excludes from federal jurisdiction any action in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State." Here, the complaint alleges that all claims arise from conditions in housing located at MacDill Air Force Base in Florida and that the resulting injuries occurred in Florida. Because all alleged claims arise from events occurring in Florida and resulted in injuries in Florida, the statutory exclusion applies. For these reasons, the complaint, as pleaded, fails to establish subject-matter jurisdiction under 28 U.S.C. § 1332(d).

## CONCLUSION

Because (1) the federal enclave doctrine bars nine of the plaintiffs' nineteen claims; (2) the plaintiffs are improperly joined; and (3) the complaint fails to establish subject matter jurisdiction, the motion to dismiss is **GRANTED**. The claims of (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) breach of the warranty of habitability; (4) negligence *per se* predicated on a violation of Section 468.84 et seq., Florida Statutes, or a violation of any Tampa Ordinance; (5) medical monitoring; (6) a violation of the FDUTPA; and (7) negligent misrepresentation are **DISMISSED WITH PREJUDICE**. The remaining claims are **DISMISSED WITHOUT PREJUDICE**. No later than **APRIL 8, 2026**, the plaintiffs may amend the complaint.

- 12 -

- 13 -

**ORDERED** in Tampa, Florida, on March 18, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE