UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DILLON MULLINS et al.,

Plaintiffs,

v.

CASE NO. 8:25-cv-02637-SDM-AAS

THE MICHAELS ORGANIZATION, LLC, et al.,

Defendants.

_________________________________/

**AMENDED ORDER**

Alleging nineteen state-law claims arising from the condition of private housing on MacDill Air Force Base (MacDill), forty service-member households comprising one hundred seventy-four persons sue (Doc. 37) the three entities that managed the housing on MacDill — The Michaels Organization, LLC; [1] AMC East Communities, LLC; [2] and MMS Air Force, LLC. [3] The defendants move (Doc. 43) to dismiss, the plaintiffs respond (Doc. 48), and the defendants reply (Doc. 51).

---

[1] The Michaels Organization, LLC, organized under New Jersey law and based in New Jersey, "conducted many of the leasing and management activities relating to MacDill housing." Under the Class Action Fairness Act (CAFA), an unincorporated association, including a limited liability company, "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

[2] AMC East Communities, LLC, organized under Delaware law and based in New Jersey, "is listed as the 'Owner' on the leases signed by Plaintiffs."

[3] MMS Air Force, LLC, organized under New Jersey law and based in New Jersey, "has acted as property manager with respect to MacDill housing."

# DISCUSSION

## Subject Matter Jurisdiction Under CAFA

The complaint alleges subject-matter jurisdiction under CAFA's "mass action" provisions codified at 28 U.S.C. § 1332(d)(11). An earlier order (Doc. 59) directs each party to file a memorandum addressing subject-matter jurisdiction under CAFA, including:

> whether CAFA permits a district court to exercise original jurisdiction — rather than jurisdiction only after removal — in a mass action;
>
> whether CAFA's "single event or occurrence" exception encompasses the facts of this action;
>
> whether the aggregated claims satisfy CAFA's $5,000,000 amount-in-controversy requirement, and which plaintiffs, if any, individually satisfy the $75,000 amount-in-controversy requirement of Section 1332(a).

As discussed below, the plaintiffs' brief (Doc. 61) establishes that the predominant precedent supports jurisdiction under CAFA.[4]

### Jurisdiction Over a Mass Action

The plaintiffs sue originally in federal court and invoke CAFA's mass-action jurisdiction. The Eleventh Circuit has not decided whether CAFA confers on a district court original jurisdiction over a mass action. The circuit's only discussion of the question — a dictum in a footnote in *Lowery v. Alabama Power Co.* — observes:

[4] The complaint establishes minimal diversity and satisfies the requirement of one hundred or more plaintiffs. *See* 28 U.S.C. § 1332(d)(11)(B)(i).

> Section 1332(d)(11)(A) provides that a mass action will be deemed a "class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A). It would seem, if one looked solely to this provision, that Congress intended to confer only removal jurisdiction over mass actions. The provision clearly states that mass actions are removable and makes no mention of original jurisdiction.
>
> In tension with this reading of the provision, however, is clear language that likewise subjects mass actions to the requirements of § 1332(d)(2) to (10). The tension arises because § 1332(d)(2) grants the district courts "original jurisdiction of any civil action which [meets CAFA's diversity and amount in controversy requirements.]" 28 U.S.C. § 1332(d)(2). It is not clear, therefore, whether a group of plaintiffs who, choosing not to certify as a class, but otherwise meeting the requirements for a mass action, would be permitted to file a mass action originally in a district court.

483 F.3d 1184, 1200 n.41 (11th Cir. 2007) (cleaned up).[5]

Despite the "tension" between Section 1332(d)(11)(A), which speaks of removal only, and Section 1332(d)(2), which grants original jurisdiction, the Third Circuit concludes that CAFA confers on a district court original jurisdiction over a mass action. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324 (3d Cir. 2022) ("We . . . hold that mass actions initiated in federal district court are considered class actions if they otherwise meet the provisions of paragraphs (2) through (10),

---

[5] *See also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006) (per curiam) ("Congress's use of the word 'removable' in the text of § 1332, a statute establishing original jurisdiction, blurs what had previously been a clear distinction between jurisdiction and removal statutes, and thus obscures the reach of jurisdiction over mass actions. Because Congress did not refer to original jurisdiction in either the mass action provision itself, or in § 1453, the text does not answer the important question of when there is original federal jurisdiction over mass actions, and what the scope of that original jurisdiction might be.").

and that district courts accordingly have original jurisdiction over those mass actions.").[6]

*Mabe* resolves the "tension" in favor of original jurisdiction primarily because a removal-only reading would, *Mabe* claims, frustrate the congressional purpose stated in Sections 2(a)(4)(A) and (2)(b) of CAFA:

> Congress finds th[at] ... [a]buses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are [ ] keeping cases of national importance out of Federal court;
>
> The purposes of [CAFA] are to [ ] assure fair and prompt recoveries for class members with legitimate claims[,] restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction[,] and benefit society by encouraging innovation and lowering consumer prices.

*Mabe*, 43 F.4th at 320 (alterations in original); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (describing CAFA's "primary objective" as "ensuring 'Federal court consideration of interstate cases of national importance'").

*Mabe* reasons:

> It would seem, then, passing strange to construe ambiguous language as *preventing* a plaintiff from asking a federal court to consider an interstate case of national importance pursuant to diversity jurisdiction. True, Congress's mention of removal

[6] *See also Groom v. Bank of America*, 2012 WL 50250, at *8 n.4 (M.D. Fla. Jan. 9, 2012) ("While the statute is ambiguous . . . [the defendants'] briefing has not convinced the Court that Congress intended to restrict federal jurisdiction over mass actions to cases which were originally filed in state court."); 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 6:24 (6th ed. 2022) (stating that "the statute's precise words do not appear to enable original jurisdiction over mass actions," but failing to note any judicial decision holding that CAFA confers over a mass action removal jurisdiction only); 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3601 (3d ed. 2026) (describing CAFA as "provid[ing] the federal courts with original jurisdiction over a class or mass action").

> without any mention of original jurisdiction could tend to imply an intent not to provide original jurisdiction. But because the statutory purpose suggests that the inclusion of removal jurisdiction was not done to the exclusion of original jurisdiction, that implication does not attach . . . .
>
> And since Congress's animating concern was state and local courts' tendency to keep class actions for themselves, when examined in light of CAFA's statement of purpose, the text of § 1332(d)(11) is best read as ensuring that qualifying mass actions — like class actions — are not being kept from the federal courts . . . .
>
> For that reason, we interpret § 1332(d)(11) as deeming all mass actions that comport with the requirements of paragraphs (2) through (10) to be class actions within § 1332(d)(2)'s grant of original jurisdiction.

43 F.4th at 323 (emphasis in the original).[7]

In addition to *Mabe*'s purposive reading, the plaintiffs argue that the structure of CAFA's mass action provisions supports original jurisdiction:

> While [Section 1332(d)(11)(a)] refers to actions "removable under paragraphs (2) through (10)," none of those paragraphs speak to removal. Moreover, the provision cross-references 28 U.S.C. § 1453, the statute that *does* speak to the standards for removal of class actions. It is therefore through the operation of § 1453, not paragraphs (2) through (10), that a qualifying mass action can be removed . . . .
>
> [T]he provision, especially when read in conjunction with Section 1453, thus provides that a mass action that "meets the provisions of" paragraphs (2) through (10) qualifies as a class

---

[7] Also, *Mabe* "conclude[s] that the legislative history supports our interpretation of the statutory language. The Senate Judiciary Committee Report, for example, states that, under § 1332(d)(11), a mass action 'will be treated as a class action for jurisdictional purposes. Thus, if such a civil action met the other diversity jurisdictional prerequisites set forth for class actions in this legislation, that civil action would be subject to federal jurisdiction.' It further states that § 1332(d)(11) 'expands federal jurisdiction over mass actions.' While neither of these statements explicitly states that *original* jurisdiction will expand, it is equally true that neither says *only removal* jurisdiction will expand. We will not read qualifying language into a statement that contains none; had Congress intended to so limit their expansions, it surely would have given some indication to that effect." *Mabe*, 43 F.4th at 324 (quoting S. Rep. No. 109-14 at 46 (2005)) (emphasis in original).

> action both for purposes of removal jurisdiction under § 1453 and for purposes of original jurisdiction under § 1332(d)(2).

*See also Mabe*, 43 F.4th at 322 ("[B]ecause section 1453 is the basis for removal, what other purpose would Congress have had in treating mass actions as class actions under subsection (d) if not to establish original jurisdiction?").

A "Mass Action"

Section 1332(d)(11)(B)(i) defines a "mass action" as a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." This action qualifies.[8] One hundred seventy-four named plaintiffs join in a single complaint, propose a joint trial, and assert claims for monetary relief presenting common questions of law and fact, such as, whether the conditions in the MacDill homes breached the leases and the governing standard of care.

[8] The predominant result reached by the courts and, consequently, by this order, construes CAFA to permit the filing of a "mass action" as an original action, despite the fact that the episode at the bottom of this action was confined to housing for service members at MacDill AFB near Tampa. To reach that result, the courts have resolved several genuinely arguable issues of statutory interpretation in favor of permitting an original action under CAFA. The resolution of some of these issues requires considerable contortion or creates an odd result or both. For example, Chapter 89 of Title 28 of the United States Code, 28 U.S.C. §§ 1441–1455, is titled "District Courts: Removal of Cases from State Courts," which strongly suggests (but apparently not strongly enough for many) that the contents of the chapter govern removal and not an original action. Further, 28 U.S.C. § 1332(c)(11)(A) states, "For the purposes of this subsection and Section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." Does this mean if the action is not a removed action that the action is not "deemed" a class action? Further, Section 1453(c) permits immediate and accelerated appellate review (if the court of appeals accepts the appeal) of "an order of a district court granting or denying a motion to remand a class action to the state from which it was removed. . . ." Does this mean that the obvious purpose of this extraordinary appellate procedure — to confirm federal jurisdiction before an immense quantity of resources and time is expended to achieve a result that might prove void for lack of jurisdiction — is unavailable to confirm federal jurisdiction in a mass action brought as an original action even though immediate appellate review is available in a removed mass action? Or does "removed" mean "original" and does "remand" include "dismissal" to permit immediate appellate review for an original CAFA mass action in the same manner as a removed CAFA mass action?

Also, minimal diversity exists. At least one plaintiff is a citizen of a state other than New Jersey or Delaware, and each defendant is a citizen of New Jersey, Delaware, or both.[9]

The "Local Event" Exception

The "local event" exception, 28 U.S.C. § 1332(d)(11)(B)(ii)(I), provides that "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in the State or in States contiguous to that State." *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 743 (11th Cir. 2020), explains that "'an event or occurrence' refers to a series of connected, harm-causing incidents that culminate in one event or occurrence giving rise to plaintiffs' claims." *Spencer* identifies from a sister circuit with whom "[the Eleventh Circuit's] interpretation of the local event exception aligns," *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 (5th Cir. 2014), as an exemplar.

In *Rainbow Gun Club*, a group of 167 lessors of oil, gas, and mineral rights initiated a mass action under CAFA after a well dug by the defendant lessees failed. *Rainbow Gun Club* reasons that the "local event" exception applies despite

[9] *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only that "any member of a class of plaintiffs is a citizen of a State different from any defendant").

the plaintiffs' alleging several negligent acts because the plaintiffs' claims ultimately arise from a single occurrence: the failure of the well. 760 F.3d at 413.

The defendants argue that the local event exception applies because the first amended complaint alleges as "Facts Common to All or Most Families": (1) that the defendants refused to follow housing policies; (2) that the defendants provided the plaintiffs an inadequate or misleading maintenance history; (3) that the plaintiffs justifiably relied on the defendants' false assurances of the homes' safety; (4) that the defendants repaired the homes without proper containment; (5) that the plaintiffs encountered mold or another toxic substance in the MacDill homes; and (6) that nearly every plaintiff suffered allergy or cold symptoms. The defendants correctly observe that the first amended complaint alleges a "contextually connected series of incidents" at the MacDill homes, but absent a culminating singular "event or occurrence giving rise to plaintiffs' claims," the "local event" exception is inapplicable. *Spencer*, 953 F.3d at 743–44.[10] ("Without allegations that the Defendants' acts were related in triggering one harm-causing event or occurrence, this complaint cannot satisfy the local event exception . . . . [A]

---

[10] *See also Gastaldi v. Sunvest Communities USA, LLC*, 256 F.R.D. 673, 677 (S.D. Fla. 2009) ("Sales of condominiums to hundreds of individuals around the country over a period of one and one half years simply does not constitute an 'event or occurrence.'"); *In re Eagle Cases*, 2009 WL 9119991, at *22 (M.D. Fla. Nov. 27, 2009) ("The sale of a product to different people does not qualify as an event.") (internal quotation marks omitted); *cf. Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1315 (M.D. Fla. 2008) ("[T]his exception keeps a case based on a single event or occurrence, like a chemical spill or a building collapse, in state court despite otherwise meeting the definition of a removable mass action."); *Allen v. Monsanto Co.*, 2010 WL 8752873, at *2, *9 (N.D. Fla. Feb. 1, 2010) (holding the ongoing release of pollutants as "in essence a continuous event" and reasoning that "so long as the event is relatively uniform and ongoing in nature and is not interrupted by some other interceding event," the event "remains a single event or occurrence.").

series of discrete incidents that, both separately and in combination, caused the Plaintiffs harm . . . is not enough for the local event exception." A review of the first amended complaint reveals no one culminating, harm-causing event or occurrence. The "local event" exception does not apply.

Amount in Controversy

Under 28 U.S.C. § 1332(d)(2), "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." Under Section 1332(d)(11)(B)(i), "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)" — that is, only over a plaintiff whose claim exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

The plaintiffs allege that each claim exceeds $75,000 and that the claims in the aggregate exceed $5,000,000. Awards far exceeding these jurisdictional amounts in comparable actions confirm the plausibility of the plaintiffs' allegations. *See, e.g., Jakab v. Ever April Apartments, Inc.*, No. CACE-22-004874 (Fla. 17th Cir. Ct. Apr. 26, 2023) (awarding $5,532,467 for mold exposure); *Jividen v. MLCasa V, L.P.*, No. CACE-18-011479 (Fla. 17th Cir. Ct. Apr. 29, 2021) (awarding more than $48 million for mold exposure).

**The "Federal Enclave Doctrine"**

Under Article I, Section 8, Clause 17 of the United States Constitution, Congress may "exercise exclusive Legislation . . . over all Places purchased by the

Consent of the Legislature." *Parker Drilling Mgmt. Servs., Ltd. v. Newton,* 587 U.S. 601, 611–12 (2019), explains that "when an area in a State becomes a federal enclave, only the [state] law in effect at the time of the transfer of jurisdiction continues in force as surrogate federal law." (internal quotation marks omitted).

MacDill became a federal enclave in 1950, when Florida ceded to the United States the territory now constituting MacDill.[11] *See United States v. Boling*, No. 8:19-cr-518-T-36JSS, 2020 WL 1931328 (M.D. Fla. Apr. 2, 2020) (Sneed, Mag. J.), *report and recommendation adopted*, No. 8:19-CR-518-T-36JSS, 2020 WL 1929465 (M.D. Fla. Apr. 21, 2020) (Honeywell, J.) (recognizing MacDill as a federal enclave); *Eid v. Michaels Mgmt. Servs., LLC*, No. 8:24-cv-1544-TPB-AAS, 2025 WL 917820, at *2 (M.D. Fla. Mar. 26, 2025) (Barber, J.) (recognizing the same). "Therefore, to the extent state law is to be applied to events occurring on MacDill, it is Florida state law as it existed in 1950, when the transfer of jurisdiction took place." *Eid*, 2025 WL 917820, at *2. Under the "federal enclave doctrine," the parties' claims are presumptively governed by Florida state law as it existed in 1950, but 28 U.S.C. § 5001(b) creates an exception for actions based on "physical injury."

---

[11] Citing *King v. Akima Global Servs., LLC*, 775 F. Appx. 617, 621 (11th Cir. 2019), the plaintiffs argue that judicial notice of MacDill's federal-enclave status is improper. The present action is readily distinguishable from *King*, which held that the record contained insufficient evidence to establish that the territory in question constituted a federal enclave. Here, the date and conditions of MacDill's cession to the United States are established by the 1950 "Deed of Cession," which appears in the records of the Florida Department of State and which the defendants attach as an exhibit.

Section 5001(b) states that "[i]n a civil action brought to recover on account of an injury sustained in [a place subject to the exclusive jurisdiction of the United States within a State], the rights of the parties shall be governed by the law of the State in which the place is located." As used in Section 5001(b), "injury" means a physical injury. [12] Although Section 5001(b) does not expressly authorize the application of state law post-dating cession, persuasive authority outside the Eleventh Circuit concludes that Section 5001(b) "envisions the application of the current substantive law of the surrounding state in actions for death or personal injury occurring within a federal enclave." *Andersen v. Lewis McChord Communities, LLC*, No. 3:21-cv-05391-DGE, 2022 WL 874774, at *3 (W.D. Wash. Mar. 24, 2022) (Estudillo, J.) (quoting *Vasina v. Grumman Corp.*, 644 F.2d 112, 118 (2d Cir. 1981)).[13]

[12] The plaintiffs urge a reading of "injury" that encompasses any injury, physical or not. Most courts reject that reading and confine Section 5001(b) to a claim for physical injury. *See, e.g.*, *Colon v. United States*, 320 F. Supp. 3d 733, 746 (D. Md. 2018). As explained in *Shurow v. Gino Morena Enterprises, LLC*, the term "injury" admits of only two plausible interpretations: "(1) a physical injury sustained by one's person or (2) any injury a person might sustain." 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017) (Lorenz, J.). Under the latter and broader interpretation, Section 5001(b) would encompass the full spectrum of Article III "injury-in-fact" and would effectively abrogate the federal enclave doctrine. For this reason, *Shurow* confines Section 5001(b) to a claim "brought to recover on account of" a physical injury.

[13] Less availing than their reliance on Section 5001(b) is the plaintiffs' reliance on the Florida choice-of-law provisions in the leases. The plaintiffs cite *Johnson v. Lendlease (US) Public Partnerships, LLC*, No. 7:21-cv-188-D, 2022 WL 2447091 (E.D.N.C. July 5, 2022) (Dever, J.), but, as Judge Barber observes in *Eid*, *Johnson* fails to support the proposition that private parties may contractually require the application of modern state law within a federal enclave. *Fischer v. Fort Belvoir Residential Communities, LLC*, expressly criticizes *Johnson* and concludes that there is "no authority in support of [the] conclusion that choice-of-law language can effectively abrogate the federal enclave doctrine." No. 1:22-cv-286-RDA-LRV, 2024 WL 666067, at *5 (E.D. Va. Feb. 16, 2024) (Alston, J.). Further, even if the leases validly select Florida law, "[r]eferences to 'applicable law' do not evince an intent to apply any specific law." *Vinales v. AETC II Privatized Hous., L.L.C.*, 146 F.4th 434, 442 (5th Cir. 2025).

For these reasons, and because Florida ceded MacDill to the United States in 1950, the governing state law within the enclave remains the law of Florida in 1950 at the time of cession. But in accord with Section 5001(b), the plaintiffs may overcome that limitation to the extent a claim is "brought to recover on account of" a "personal injury" (that is, a physical injury).[14]

Count V: Negligent Infliction of Emotional Distress

*Int'l Ocean Tel. Co. v. Saunders*, 14 So. 148, 152 (1893), rejects recovery for the negligent infliction of emotional distress. ("[The plaintiff's] only injury, resulting directly from such breach of contract, was mental suffering . . . . The resultant injury . . . is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value."). *Saunders* remains the rule in 1941 and in 1950. *Dunahoo v. Bess*, 200 So. 541 (1941); *Kirksey v. Jernigan*, 45 So. 2d 188, 189 (Fla. 1950) ("[T]here can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved."). Also, a claim of negligent infliction of emotional distress seeks recovery for emotional distress — not for a physical injury — even if the distress manifests in a physical symptom. *See Slocum v. Food Fair Stores of Fla., Inc.*, 100 So. 2d 396, 397 (Fla. 1958) (describing "the

[14] To the extent a post-cession state-law claim is "brought to recover on account of," for example, "allergy or cold symptoms, respiratory and sinus ailments, pain, fatigue, insomnia, headaches or migraines, skin problems, [or] stomach ailments," the claim is not barred. But to the extent a post-cession state-law claim is "brought to recover on account of," say, "emotional harm [that] has manifested in physical injuries," the claim remains barred.

only direct injury" in an emotional-distress action as "mental or emotional with physical symptoms merely derivative therefrom"). For these reasons and because the claim necessarily is not "brought to recover on account of" a physical injury, the claim is barred unconditionally.[15]

Count VI: Intentional Infliction of Emotional Distress

In 1958 — eight years after the cession of MacDill — the tort of intentional infliction of emotional distress remained unrecognized in Florida. *Slocum*, 100 So. 2d at 397–98 (posing as an open "[q]uery" whether "a deliberate disturbance of emotional equanimity state[s] an independent cause of action in tort" and affirming dismissal of the claim). Florida adopted the claim in 1985. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (adopting Section 46, *Restatement (Second) of Torts* (1965)). For these reasons, and because a claim of intentional infliction of emotional distress necessarily is not "brought to recover on account of" a physical injury, the claim is barred unconditionally.

[15] Throughout this order, whether a post-cession state-law claim is "barred unconditionally" or "barred conditionally" depends on whether the claim can qualify under Section 5001(b), which excepts from the federal enclave doctrine a claim "brought to recover on account of" a physical injury. A post-cession state-law claim is barred unconditionally if the elements of the claim preclude recovery on account of a physical injury (that is, if the claim can be brought to recover on account of a non-physical injury only, such as an economic injury or an emotional injury). A post-cession state-law claim is barred conditionally if the elements of the claim accommodate recovery on account of a physical injury (that is, if the claim can be brought to recover on account of either a physical injury only or a physical injury in addition to a non-physical injury). Of course, neither a conditional nor an unconditional bar applies to a state-law claim that is outside the scope of the federal enclave doctrine (that is, a state-law claim that existed as of the date of cession).

Count VII: Warranty of Habitability

The Florida legislature enacted the warranty of habitability — now codified at Section 83.51, Florida Statutes — in 1973. Ch. 73-330, § 2, Laws of Fla. (1973). Although post-dating the cession of MacDill, a claim of breach of the warranty of habitability potentially is "brought to recover on account of" a physical injury caused by the breach and is barred conditionally.

Count IX: Negligence *Per Se*

*Atl. Coast Line R.R. Co. v. Crosby,* 43 So. 318, 336 (Fla. 1907), recognizes the doctrine of negligence *per se*. Although the doctrine predates the cession of MacDill, a claim of negligence *per se* persists within the enclave only if the predicate statute, ordinance, or regulation predates the date of cession or if the claim is “brought to recover on account of” a physical injury caused by a violation of the predicate authority. The plaintiffs allege violations of Sections 468.84–468.8424, Florida Statutes (the "Mold-Related Services Licensing Program"), and of Sections 19-47 and 19-231 of the Tampa Code of Ordinances ("Offensive conditions declared a public nuisance; prohibited conditions enumerated" and "Standards for dwellings generally").

Enacted in 2007 and effective in 2010, the Mold-Related Services Licensing Program succeeds no substantially similar statute predating the cession of MacDill. *See* Ch. 2007-235, § 3, Laws of Fla. Accordingly, any claim of negligence *per se* predicated on the program is barred conditionally.

At the time of cession, no Tampa ordinance governed the land now constituting MacDill, which lay outside the municipal limits of Tampa. Chapter 23551, Laws of Florida (1945), establishes the limits in effect in 1950, and before cession the limits expanded only through discrete petition annexations under Chapter 26270, Laws of Florida, Special Acts (1949). Those limits excluded the southern tip of the Interbay Peninsula, the site of MacDill. On 1953, three years after cession, the legislature extended the limits southward across the peninsula. Ch. 29548, Laws of Fla., Sp. Acts (1953); *see Gillete v. City of Tampa*, 57 So. 2d 27, 28 (Fla. 1952) (describing the limits then in effect as "established by Chapter 23551, Laws of Florida, Acts of 1945").[16] Also, the Deed of Cession describes the ceded land as "within the limits of the County of Hillsborough, State of Florida" and nowhere mentions the City of Tampa, a conspicuous omission if the ceded land had sat within the municipal limits. Because (1) at the time of cession no Tampa ordinance governed the land now constituting MacDill and (2) a claim of negligence *per se* predicated on the violation of a Tampa ordinance potentially is "brought to recover on account of" a physical injury caused by the violation, a claim of negligence *per se* predicated on the violation of any Tampa ordinance,

---

[16] *See also* U.S. Geological Survey, Tampa–Hillsborough County, Fla., *Topographic Map* (1947) (depicting the southern tip of the Interbay Peninsula outside the municipal boundary), https://pastmaps.com/map/tampa-hillsborough-county-fl-usgs-topo-1947-1.

including the provisions now codified at Sections 19-47 and 19-231,[17] is barred conditionally.[18]

Count X: Medical Monitoring

*Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. 3d DCA 1999), "recognizes a cause of action for medical monitoring." Because a medical monitoring claim requires only "exposure greater than normal background levels . . . to a proven hazardous substance" and because the claim is inapplicable when a plaintiff alleges a physical injury (in which case traditional tort remedies govern), the claim is barred unconditionally. *Petito*, 750 So. 2d at 106.

[17] Tampa, Fla., Code § 19-47 (deriving from Ord. No. 89-269, § 2(48-32) (Oct. 12, 1989), and Ord. No. 90-124, § 2(48-32) (May 17, 1990)); Tampa, Fla., Code § 19-231 (deriving from Ord. No. 89-269, § 2(48-171) (Oct. 12, 1989); Ord. No. 90-124, § 2(48-171) (May 17, 1990); and Ord. No. 96-204, § 33 (Sept. 26, 1996)).

[18] The recency of the current ordinances is not alone dispositive. Substantially similar requirements appeared in the 1928 Code of the City of Tampa, which remained in effect, as amended, at the time of cession. *Compare* City of Tampa Code Ch. 2, § 122 (1928) ("Whenever any building in the City of Tampa, by reason of age, decay, or other causes, becomes dangerous to its occupants or to the occupants of surrounding buildings, or becomes dangerous on account of fire or other reasons, or becomes a menace to public health, the same is hereby declared a nuisance."), *with* Tampa, Fla., Code § 19-47 ("Nothing shall be allowable on the premises within the corporate limits of the city . . . that shall in any way be offensive or noxious by reason of the emission of odors, gases, dust, smoke, light, vibration or noise . . . nor shall anything be constructed or maintained that would in any way constitute an eyesore or nuisance to adjacent property owners or residents or to the community."); and *compare* City of Tampa Code Ch. 2, § 208 (1928) ("The roof of every tenement house shall be maintained watertight, and rainwater therefrom shall not discharge into the yards or courts, or over the sidewalk into streets."), *with* Tampa, Fla., Code § 19-231 (prescribing "[s]tandards for dwellings generally"). But even if the differences between the 1928 provisions and the current ordinances represent only "minor . . . changes modify[ing] laws existing at the time of cession," *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012), a claim of negligence *per se* predicated on the violation of an ordinance that never governed the ceded land is barred conditionally.

Counts XII and XIII: Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

The Florida legislature enacted FDUTPA — codified at Sections 501.201–501.213, Florida Statutes — in 1973. Ch. 73-124, Laws of Fla. (1973). Also, FDUTPA expressly excludes a claim for physical injury. Fla. Stat. § 501.212(3) ("This part does not apply to . . . [a] claim for personal injury or death . . . ."). For these reasons and because a FDUTPA claim necessarily is not "brought to recover on account of" a physical injury, each FDUTPA claim is barred unconditionally.

Counts XIV and XV: Negligent Misrepresentation

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997), adopting Section 552 of the *Restatement (Second) of Torts* (1977), recognizes by name a claim for negligent misrepresentation. But the substance of the claim predates the cession of MacDill. In 1894, *Wheeler v. Baars*, 15 So. 584, 588 (Fla. 1894), holds that an incorrect statement supports an action for "deceit" if made "under circumstances in which the person making it ought to have known, if he did not know, of its falsity." Section 552 imposes liability for the substantially identical "fail[ure] to exercise reasonable care or competence in obtaining or communicating the information." *Restatement (Second) of Torts* § 552(1) (1977). Although in or before 1950 Florida courts did not employ the term "negligent misrepresentation" to describe a distinct claim for relief, the elements of the claim resemble the elements of an action for deceit and, in any event, represent only "minor . . . changes modify[ing] laws existing at the time of cession." *Allison v.*

*Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012). Counts XIV and XV are not barred.

Counts XVI, XVII, XVIII, and XIX: Fraud

Although the defendants correctly assert that in or before 1950 Florida courts did not employ the terms "fraudulent inducement" or "fraudulent concealment" to describe a distinct claim for relief, the elements of each claim substantially resemble the elements of fraud generally and, in any event, represent only "minor . . . changes modify[ing] laws existing at the time of cession." *Allison*, 689 F.3d at 1237. The claims are not barred.[19]

**The Remaining Claims**

For one or more reasons stated in the complaint and in the response to the motion to dismiss, Counts I (breach of contract), II (negligence), III (gross negligence), VIII (third-party beneficiary contract), and XI (unjust enrichment) each states a claim; each claim appears timely; and no claim against any defendant requires, as the defendants contend, "piercing the corporate veil."

Count IV: Nuisance

Under Florida law, private nuisance rests on the defendant's use of property in a manner that injures another's property:

> A nuisance is anything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable . . . However, the law of private nuisance is bottomed on the

[19] Also, for one or more reasons stated in the complaint and in the response to the motion to dismiss, the plaintiffs plead fraud with particularity sufficient under Rule 9(b), Federal Rules of Civil Procedure, and otherwise state a claim for fraud.

> fundamental rule that every person should so use his own property as not to injure that of another. Private nuisance is not an additional type of consumer protection for purchasers of realty.

*Appleby v. Knauf Gips KG*, No. 22-CIV-61411-RAR, 2023 WL 3844770, at *3 (S.D. Fla. June 5, 2023) (Ruiz, J.) (cleaned up); *accord Karpel v. Knauf Gips KG*, No. 21-24168-CIV, 2022 WL 4366946, at *7 (S.D. Fla. Sept. 21, 2022) (Scola, J.) ("Thus, integral to the notion of a private nuisance is the *use* of one's property in a way that is somehow *adverse* to another's interest in *their* property.") (emphases in original). The complaint alleges no cognizable "use of property" by the defendants — only a failure to maintain — and a failure to maintain supports no claim of nuisance. *See Stallworth v. Omninet Vill., L.P.*, No. 6:16-cv-546-Orl-31DAB, 2016 WL 9274926, at *4 (M.D. Fla. July 18, 2016) (Presnell, J.) (concluding that mold caused by poor maintenance is not a "use of property that can be attributed to Defendants.").

## CONCLUSION

The motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.[20] Because each rests on a cause of action post-dating MacDill's cession and because each necessarily is not "brought to recover on account of" a

[20] Although athwart the currently predominant precedent, an interpretation and application of CAFA that is more textually correct and more faithful to the design and purpose of the statute — reportedly "to ensure federal consideration of interstate cases of national importance," — that CAFA permits only a removed action and not an original action; that the complaint in this action alleges a single event or occurrence in one federal enclave in one county in one state, that is, alleges only a purely local occurrence outside the scope of CAFA and of purely local and state, not national, interest; that a "personal injury" or "injury" under 28 U.S.C. § 5001(b) is not textually or otherwise limited to a physical injury; and that dismisses this action for lack of jurisdiction.

"personal injury" under 28 U.S.C. § 5001(b), Counts V (negligent infliction of emotional distress), VI (intentional infliction of emotional distress), X (medical monitoring), and XII–XIII (FDUTPA) are barred unconditionally by the federal enclave doctrine and are **DISMISSED WITH PREJUDICE**. Because each rests on an enactment post-dating MacDill's cession but each potentially is "brought to recover on account of" a physical injury under Section 5001(b), Counts VII (breach of the warranty of habitability) and IX (negligence *per se*) are barred conditionally by the "federal enclave doctrine" and are **DISMISSED WITHOUT PREJUDICE**. Failing to state a claim, Count IV (nuisance) is **DISMISSED WITHOUT PREJUDICE**.[21]

Because of the action's size and complexity, a case management conference is necessary. The parties are **DIRECTED** to confer and to select, by submission of a joint notice, either the afternoon of **AUGUST 31, 2026**, the afternoon of **SEPTEMBER 1, 2026**, or the afternoon or morning of **SEPTEMBER 8, 2026**, for a case management conference. Any requirement to amend the complaint is **SUSPENDED** until after the case management conference. The plaintiffs move (Doc. 67) to amend the case management and scheduling order. Although an

---

[21] For maximum clarity, the remaining claims are Counts I (breach of contract), II (negligence), III (gross negligence), VIII (third-party beneficiary contract), XI (unjust enrichment), XIV–XV (negligent misrepresentation), and XVI–XIX (fraud). The plaintiffs may re-assert Count IV (nuisance) only if the plaintiffs allege a cognizable "use of property that can be attributed to the defendants." *Stallworth*, 2016 WL 9274926, at *4. The plaintiffs may re-assert Count VII (breach of the warranty of habitability) and Count IX (negligence *per se*) only to the extent each claim is "brought to recover on account of" a physical injury — for Count IX, a physical injury resulting from the alleged violation of a predicate statute, ordinance, or regulation. *See* 28 U.S.C. § 5001(b); *Shurow*, 2017 WL 1550162, at *3.

order will extend the case deadlines, adjudication of the motion is **DEFERRED** until after the case management conference.

ORDERED in Tampa, Florida, on August 21, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE